UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

ADRIAN THOMAS,

                    Plaintiff,

    -against-

| | |
|---|---|
| CITY OF TROY, ADAM R. MASON, Individually, RONALD FOUNTAIN, Individually, TIM COLANERI, Individually, RENSSELAER COUNTY, and MICHAEL SIKIRICA, Individually, | Civil Case No.:  17-cv-626 (GTS/DJS) |

                    Defendants.

## MEMORANDUM OF LAW

Dated:  August 24, 2017           Bailey, Johnson, DeLeonardis & Peck, P.C.

                              By: _____s/_____
                                  Crystal R. Peck
                                  Bar Roll No.: 514375
                         Attorneys for Defendants, County of Rensselaer
                         and Michael Sikirica
                         5 Pine West Plaza, Suite 507
                         Washington Avenue Extension
                         Albany, NY 12205
                         (518) 456-0082
                         CRPeck@baileyjohnson.com

TABLE OF CONTENTS

PRELIMINARY STATEMENT…………………………………………………………1

STATEMENT OF FACTS……………………………………………………………….1

ARGUMENT…………………………………………………………………………..4

POINT I: PLAINTIFF'S CAUSE OF ACTION AGAINST DR. SIKIRICA FOR CONSPIRACY TO FABRICATE EVIDENCE IS TIME-BARRED……………….5

POINT II:  DR. SIKIRICA SHOULD BE AFFORDED IMMUNITY……………...7

      A.     Dr. Sikirica's Is Entitled to Absolute Immunity for His Trial Testimony………………………………………………………7

      B.     Dr. Sikirica's Cause of Death Determination Should be Afforded Absolute Immunity……………………………………….8

      C.     In the Alternative, Dr. Sikirica Should Be Afforded Qualified Immunity for his Cause of Death Determination…………...11

POINT III: PLAINTIFF HAS NOT SUFFICIENTLY ALLEGED MUNICIPAL LIABILITY AGAINST THE COUNTY OF RENSSELAER………………………13

CONCLUSION……………………………………………………………………….16

## **TABLE OF AUTHORITIES**

Federal Cases

Briscoe v. LaHue,
  460 U.S. 325 (1983) ........................................................................................................ 7

Heck v. Humphrey,
  512 U.S. 477 (1994) ........................................................................................................ 5

Papasan v. Allain,
  478 U.S. 265 (1986) ........................................................................................................ 4

Rehberg v. Paulk,
  566 U.S. 356 (2012) ................................................................................................ 7, 8, 9

Amron v. Morgan Stanley Investment Advisors Inc.,
  464 F.3d 338 (2d Cir. 2006) ........................................................................................... 4

Babi-Ali v. City of New York,
  979 F.Supp. 268 (S.D.N.Y. 1997) ................................................................................ 10

Bailey v. City of New York,
  79 F. Supp. 3d 424 (E.D.N.Y. 2015) .............................................................................. 5

Chesney v. Valley Stream Union Free Sch. Dist. et al., No. 05 Civ.,
  2007 WL 1288137 ........................................................................................................... 4

Cortec Indust., Inc. v. Sum Holding L.P.,
  949 F.2d 42 (2d Cir. 1991) ............................................................................................. 1

Delaney v. City of Albany,
  2014 WL 701637 (N.D.N.Y. 2014) .............................................................................. 14

Doe v. Phillips,
  81 F.3d 1204 (2d Cir. 1996) ......................................................................................... 11

Dory v. Ryan,
  999 F.2d 679 (2d Cir. 1993) ........................................................................................... 5

Henschke v. New York Hosp.-Cornell Med. Ctr.,
   821 F. Supp. 166 (S.D.N.Y. 1993) ................................................................................1

Jaghory v. New York State Dep't of Educ.,
   131 F.3d 326 (2d Cir. 1997) ..........................................................................................4

Keller v. Sobolewski, No. 10-CV-5198,
   2012 WL 4863228 (E.D.N.Y. Oct. 12, 2012) ...............................................................5

Kenney v. Clay,
   172 F. Supp. 3d 628 (N.D.N.Y. 2016) .........................................................................11

King v. Simpson,
   189 F.3d 284 (2d Cir. 1999) ..........................................................................................4

Knox v. Cty. of Ulster,
   2013 WL 286282 (N.D.N.Y. 2013) ..............................................................................16

Leeds v. Meltz,
   85 F.3d 51 (2d Cir.1996) ................................................................................................5

McDonough v. Smith, No. 1:15-CV-01505,
   2016 WL 5717263 (N.D.N.Y. Sept. 30, 2016) .......................................................5, 6, 8

Mejia v. City of New York,
   228 F. Supp. 2d 234 (E.D.N.Y. 2002) .........................................................................14

Mills v. Small,
   446 F.2d 249 (9th Cir. 1971) ..................................................................................10, 11

Mitchell v. Home,
   377 F. Supp. 2d 361 (S.D.N.Y. 2005) ...........................................................................5

Mithcell v. Forsyth,
   472 U.S. 511 (1985) .......................................................................................................9

Morse v. Spitzer,
   2012 WL 3202963 (E.D.N.Y.2012) ...............................................................................6

Muzio v. Inc. Village of Bayville,
   2006 WL 39063 ...............................................................................................................4

Newton v. City of New York,
   738 F.Supp. 397 (S.D.N.Y. 2010)....................................................................................8, 9, 10

Pauk v. Bd. of Trustees of City Univ. Of N.Y.,
   654 F.2d 856 (2d Cir. 1981)...................................................................................................5

Ricciuti v. N.Y.C. Transit Auth.,
   124 F.3d 123 (2d Cir. 1997)...................................................................................................5

Simms v. City of New York,
   480 F. App'x 627 (2d Cir. 2012) ..........................................................................................15

Smith v. Local 819 I.B.T. Pension Plan,
   291 F.3d 236 (2d Cir. 2002)...................................................................................................4

Veal v. Geraci,
   23 F.3d 722 (2d Cir. 1994).....................................................................................................5

Walker v. City of New York,
   974 F.2d 293 (2d Cir. 1992).......................................................................................13, 14, 15

State Cases

Infante v. Dignan,
   12 N.Y.3d 336 (2009) ...........................................................................................................10

People v. Molineux,
   168 N.Y. 264 (1901) .............................................................................................................14

People v. Thomas,
   22 N.Y.3d 629 (2014) .............................................................................................1, 2, 6, 12

Tarter v. State,
   68 N.Y.2d 511 (1986) .............................................................................................................9

Gould v. State,
   181 Misc. 884 (Ct. Cl. 1944) .............................................................................................9, 11

People v. Coombs,
   36 App.Div. 284, 55 N.Y.S. 276.............................................................................................9

Leib v. Paparo,
   84 A.D.2d 538 (2d Dept. 1981) ..............................................................................................9

Salomon v. Mahoney,
  271 A.D. 478 (4th Dept. 1946) ....................................................................................... 11

Lambert v. Garlo,
  19 Ohio App.3d 295 (1985) ..................................................................................... 10, 11

Federal Statutes

42 U.S.C. § 1983 ............................................................................................. 7, 8, 9, 10, 11

State Statutes

County Law § 674 ................................................................................................................ 13

Federal Rules

Rule 12(b)(6) of the Federal Rules of Civil Procedure ................................................... 1, 4

**PRELIMINARY STATEMENT**

Defendants County of Rensselaer and Dr. Michael Sikirica submit the following Memorandum of Law in support of their Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

**STATEMENT OF FACTS[1]**

On September 23, 2008, Plaintiff Adrian Thomas (hereinafter "Plaintiff") was arrested for the murder of his 4-month old son.  See, Peck Dec. Ex. "A"[2](Aff. of Adrian Thomas).  On September 21, 2008, Plaintiff's son was brought to Samaritan Hospital emergency room where a diagnosis of septic shock with "intracranial injuries to be ruled out" was noted.  People v. Thomas, 22 N.Y.3d 629, 637 (2014).  Plaintiff was thereafter transferred to Albany Medical Center Pediatric Intensive Care Unit.  There, the infant's treating physician concluded that, in addition to sepsis, the infant had sustained a skull fracture and suffered from blunt force trauma.  Id.  Apparently, it was later determined that the infant did not actually sustain a "skull fracture".  Dkt. No. 1 ¶ 57.

---

[1] All facts related herein are derived from Plaintiff's Complaint, an Affidavit submitted by Plaintiff in conjunction with a lawsuit bought in New York State Court of Claim pertaining to Plaintiff's arrest – Thomas v. State of New York, Claim No. 128055, and the facts articulated by the New York State Court of Appeals in People v. Thomas, 22 N.Y.3d 629 (2014).

[2] County Defendants submit that the Affidavit of Adrian Thomas and the criminal trial testimony of Dr. Sikirica can be properly considered on a Motion to Dismiss.  "The Second Circuit has identified two determining factors in evaluating materials not contained in the complaint on a 12(b)(6) motion: (1) are these documents which plaintiff either has in her possession or has knowledge of; and (2) did plaintiff rely upon these documents in bringing suit."  Henschke v. New York Hosp.-Cornell Med. Ctr., 821 F. Supp. 166, 169 (S.D.N.Y. 1993) citing *Cortec Indust., Inc. v. Sum Holding L.P.,*949 F.2d 42, 48 (2d Cir. 1991).  Here, Plaintiff is in possession of both documents as one is his own affidavit and the second was attached to the appendix of his criminal appeal.  The Affidavit contains dates pertaining to his arrest which is referenced in his Complaint.  Plaintiff further references his 2009 criminal trial, of which the attached transcript pertains, and relies on same in his Complaint.

Defendant, Dr. Michael Sikirica, is the County of Rensselaer Medical Examiner. Dr. Sikirica performed an autopsy of the infant. As a result, Dr. Sikirica issued a report indicating that Plaintiff suffered "subdural hematomas".

Plaintiff contends that the conclusions in Dr. Sikirica's report were skewed based on discussions with City of Troy Police Detective Mason, who had participated in the interrogation of Plaintiff.

Plaintiff was prosecuted and convicted of the murder on October 23, 2009. Dkt. No. 1 ¶ 15. As part of his criminal trial, the jury was permitted to consider the confession and videotaped interrogation of Plaintiff. People v. Thomas, 22 N.Y.3d 629, 637 (2014). The confession and interrogation depicted Plaintiff raising his son over his head and throwing him down on a mattress which, was alleged, to have caused a traumatic injury to the infant resulting in death. Id. Testimony was also received from the infant's treating physicians as well as the County's medical examiner. Id. The physicians testified, "citing radiologic and postmortem findings of subdural fluid collections, brain swelling and retinal hemorrhaging, as well as [Plaintiff's statement], testified that [the infant] died from intracranial injuries cause by abusively inflicted head trauma." Id. 22 N.Y.3d at 636.

Plaintiff appealed his conviction, arguing that his confession and videotaped interrogation should have been precluded. The New York State Court of Appeals overturned the conviction finding that Plaintiff's confession was not "demonstrably voluntary". Id. 22 N.Y.3d at 637. In 2014, Plaintiff was retried for the murder of his son. Dkt. No. 1 ¶ 20. At the second trial Plaintiff's confession and videotaped

2

interrogation were not submitted to the jury for consideration.  Dr. Sikirica also testified at the second trial.  His testimony was consistent with his opinion articulated in the first trial – that the infant sustained subdural hematomas.  Dkt. No. 1 ¶58.

Plaintiff was acquitted in July 2014.  He has now brought the instant lawsuit alleging that City of Troy Police Officers subjected him to malicious prosecution. Plaintiff has also brought a cause of action against Dr. Sikirica for his alleged conspiracy with City of Troy Police Officers to (1) subject him to malicious prosecution, (2) fabricate evidence, and (3) deny his right to a fair trial.  Plaintiff has further brought a cause of action against the County of Rensselaer alleging municipal liability for the County's failure to train and supervise Dr. Sikirica.

While Plaintiff's allegations against the City of Troy and individual officers are extensive, the allegations pertaining to Dr. Sikirica are fairly limited.  Plaintiff alleges that during his 2014 retrial, the prosecution "relied primarily on the Rensselaer County medical examiner, Dr. Michael Sikirica, who testified that Matthew had suffered subdural hematomas consistent with violent shaking.  Upon information and belief, Dr. Sikirica arrived at his unsupported conclusions after meeting with defendant Mason before the autopsy was completed and rendered his opinion in furtherance of defendant Mason's and the other TPB defendant officers' false accusations against Mr. Thomas based on Thomas' false coerced confession.  Dr. Sikirica's testimony was severely undercut, however, by the fact that his autopsy report failed event to acknowledge, much less to explain, the bacterial infection that he conceded Matthew was suffering.  Sikirica acknowledged the evidence of bacterial infection in his testimony, notwithstanding the

3

absence of any mention of it in his report." Dkt. No. 1 ¶58.  Plaintiff continues to allege that medical records were inconsistent with the prosecution's theory that the infant had sustained a traumatic injury.  Dkt. No. 1 ¶ 59.  Finally, Plaintiff alleges that Dr. Sikirica "was overworked, overbooked, overextended, and otherwise lacked the objectivity, temperament, discretion, and disposition to be employed as County's medical examiner, and to otherwise provide evidence and testify against criminal defendants in homicide and other serious felony prosecutions."  Dkt. No. 1 ¶67.

### ARGUMENT

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, defendants can move to have a Complaint dismissed if a viable cause of action is not stated. Fed.R.Civ.Pro.R. 12(b)(6).  Even though the Court must view all factual allegations in Plaintiff's Complaint as true, the allegations must still be sufficient to establish liability in order for Plaintiff's Complaint to survive.  Chesney v. Valley Stream Union Free Sch. Dist. et al., No. 05 Civ. 5106 2007 WL 1288137 *3 (E.D.N.Y. 2007 citing Amron v. Morgan Stanley Investment Advisors Inc., 464 F.3d 338, 344 (2d Cir. 2006), King v. Simpson, 189 F.3d 284, 287 (2d Cir. 1999), and Jaghory v. New York State Dep't of Educ., 131 F.3d 326, 329 (2d Cir. 1997).

"Conclusory statements unsupported by factual assertion or legal conclusions and characterizations couched as factual allegations" contained within Plaintiff's Complaint need not be given credit by the Court in its determination of a Rule 12(b)(6) motion. Muzio v. Inc. Village of Bayville, No. CV-99-8605 2006 WL 39063 , *3 (E.D.N.Y. January 3, 2006 citing Papasan v. Allain, 478 U.S. 265, 268 (1986) and Smith v. Local

819 I.B.T. Pension Plan, 291 F.3d 236, 240 (2d Cir. 2002).  "While the pleading standard is a liberal one, bald assertions and conclusions of law will not suffice."  Leeds v. Meltz, 85 F.3d 51, 53 (2d Cir.1996).

## POINT I

### PLAINTIFF'S CAUSE OF ACTION AGAINST DR. SIKIRICA FOR CONSPIRACY TO FABRICATE EVIDENCE IS TIME-BARRED.

The statute of limitations applicable to Section 1983 claims is the "statute of limitations applicable to personal injuries occurring in the state in which the appropriate federal court sits"; which in New York State is three years.  Dory v. Ryan, 999 F.2d 679, 681 (2d Cir. 1993); N.Y. Civ. Prac. L. § 214(5).  "Accrual of a fair trial claim based on fabrication of evidence accrues when the plaintiff learns or should have learned that the evidence was fabricated and such conduct causes the claimant some injury."  McDonough v. Smith, No. 1:15-CV-01505, 2016 WL 5717263, at *15 (N.D.N.Y. Sept. 30, 2016) citing Heck v. Humphrey, 512 U.S. 477, 489 (1994); Mitchell v. Home, 377 F. Supp. 2d 361, 373 (S.D.N.Y. 2005) (citing Veal v. Geraci, 23 F.3d 722,724-25 (2d Cir. 1994)); Pauk v. Bd. of Trustees of City Univ. Of N.Y., 654 F.2d 856, 859 (2d Cir. 1981) (citation omitted) See, e.g., Keller v. Sobolewski, No. 10-CV-5198, 2012 WL 4863228, *4 (E.D.N.Y. Oct. 12, 2012) (quoting Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 127 (2d Cir. 1997) ("A § 1983 claim for deprivation of the right to a fair trial arises '[w]hen a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors'"); Bailey v. City of New York, 79 F. Supp. 3d 424, 444 (E.D.N.Y. 2015) (quotation omitted) ("A claim premised on fabrication of evidence

5

'accrues when the plaintiff learns or should have learned that the evidence was fabricated and such conduct causes the claimant some injury").

As noted by the Court in McDonough, "the 'reference to knowledge of the injury does not suggest that the statute [of limitations] does not begin to run until the claimant has received judicial verification that the defendants' acts were wrongful. Thus, even when a plaintiff's malicious prosecution claims are premised upon a finding that evidence was fabricated, these are two distinct claims that each accrue separately." 2016 WL 5717263, at *15 (N.D.N.Y. Sept. 30, 2016) citing Morse v. Spitzer, No. 07-CV-4793, 2012 WL 3202963, *6 (E.D.N.Y.2012).

Moreover, "alleging a conspiracy to submit fabricated evidence, rather than asserting the claims against the individual defendants, does not change the accrual date of such claims." Id. (citations omitted). Accordingly, Plaintiff's fair trial and fabrication of evidence claims accrued when he knew or should have known that such evidence was being used against him and not upon his acquittal in his criminal case.

Plaintiff in his Complaint is silent as to the testimony given by Dr. Sikirica at his first trial in 2009. See generally, Dkt. No. 1. However, the Court of Appeals in its Decision overturning Plaintiff's conviction noted that the prosecution did rely on testimony of its medical examiner. People v. Thomas, 22 N.Y.3d at 636. The transcript of Dr. Sikirica's testimony at that proceeding was included in the appeal's Appendix. See, Peck Dec. Ex. "B". The cross-examination of Dr. Sikirica by Plaintiff's criminal counsel reveals that Plaintiff was aware of the contents of Dr. Sikirica's autopsy report in 2008, of Dr. Sikirica's opinion that subdural hematomas were the cause of

6

Plaintiff's bacterial infection and resulting sepsis condition and thus, the cause of the infant's death, and that Dr. Sikirica drafted his report after completing the autopsy, reviewing Plaintiff's confession, and speaking with Troy Police Officers.  See, Peck Dec. Ex. "B" pp. A1452-1453.  These fact are the basis of Plaintiff's fabrication of evidence claim against Dr. Sikirica.  These facts were known to Plaintiff in 2009, eight years prior to the filing of this lawsuit.  Any cause of action based on fabrication of evidence pertaining to these facts as stated against Dr. Sikirica had to be raised by October 2012 to be timely.  As such, Plaintiff's claims based on fabrication of evidence should be dismissed.

## POINT II

### DR. SIKIRICA SHOULD BE AFFORDED IMMUNITY

**A.    Dr. Sikirica's Is Entitled to Absolute Immunity for His Trial Testimony**

It has been a long standing rule that a trial witness enjoys absolute immunity for any claim based on the witness' testimony.  Rehberg v. Paulk, 566 U.S. 356, 366 (2012) citing Briscoe v. LaHue, 460 U.S. 325, 332-333 (1983).  The United States Supreme Court has held that this rule applies to claims brought under 42 U.S.C. § 1983, including those based on allegations of conspiracy.  Id., 566 U.S. at 369.

Allegations against Dr. Sikirica are based, at least partially, on his testimony at Plaintiff's criminal trial.  See, Dkt. No. 1, ¶58.  Dr. Sikirica's should be afforded absolute immunity for the testimony given at Plaintiff's criminal trial as he not a "complaining witness".  The Rehberg Court clarified that a "complaining witness" is not simply a witness who provided key testimony leading to an indictment or even one who performed

7

investigative work in the case. <u>Rehberg</u>, 566 U.S. at 371 (indicating that a "complaining witness" would be one that applies for the arrest warrant or makes the "critical decision to initiate prosecution"). Rather, a "complaining witness" "must take such control over the initiation of the prosecution as to effectively overtake the decision of whether to press charges away from the prosecutor". <u>McDonough v. Smith</u>, No. 1:15-CV-01505, 2016 WL 5717263, at *15 (N.D.N.Y. Sept. 30, 2016) <u>citing</u> <u>Rehberg v. Paulk</u>, 566 U.S. 356, 371-72.

Here, Plaintiff was arrested on September 23, 2008, following his confession and the death of his son. See, Peck. Dec. Ex. "A". Dr. Sikirica did not perform his autopsy until September 25, 2008. Peck Dec. Ex. "B" p. A1357. Dr. Sikirica was also not the only medical professional that found that Plaintiff sustained head trauma or testified at Plaintiff's first trial. Dkt. No. 1. ¶¶ 31-33. Nor does Plaintiff allege facts that would support a finding that Dr. Sikirica that was the moving force behind Plaintiff's arrest or indictment. Accordingly, claims based on Dr. Sikirica's trial testimony should be dismissed.

**B. <u>Dr. Sikirica's Cause of Death Determination Should be Afforded Absolute Immunity</u>**

"Absolute immunity gives 'public officials entrusted with sensitive tasks a protected area of discretion within which to carry out their responsibilities." <u>Newton v. City of New York</u>, 738 F.Supp. 397, 404 (S.D.N.Y. 2010). The United States Supreme Court takes a functional approach to immunity in claim brought pursuant to 42 U.S.C. § 1983. <u>Rehberg v. Paulk</u>, 566 U.S. 356 (2012). The Court has stated that "recognizing

that 'Congress intended [§1983] to be construed in the light of common-law principles'… the Court has looked to the common law for guidance in determining the scope of immunities available in a § 1983 action". <u>Rehberg</u>, 566 U.S. at 362-63.  Thus, inquiry is made (1) "into the immunity historically accorded the relevant official at common law and the interests behind it.", (2) whether performance of the function poses obvious risks of harassing or vexatious litigation against the official, and (3) whether there exists alternatives to damage suits against the official as a means of redressing wrongful conduct".  <u>Newton</u>, 738 F.Supp.2d at 406 <u>citing</u> <u>Mithcell v. Forsyth</u>, 472 U.S. 511, 521-23 (1985).

New York State law has historically held that "the result of a coroner's inquest is a judicial determination of the manner in which the deceased came to his death; and, if the death be occasioned by criminal means, who is guilty thereof." <u>Gould v. State</u>, 181 Misc. 884, 886 (Ct. Cl. 1944) <u>citing</u> <u>People v. Coombs</u>, 1899, 36 App.Div. 284, 55 N.Y.S. 276, aff'd 158 N.Y. 532.  Thus, a medical examiners determination as to cause of death has been held to be a quasi-judicial determination.  <u>Leib v. Paparo</u>, 84 A.D.2d 538, 538 (2d Dept. 1981)(holding that "a medical examiner's determination that a decedent committed suicide is a quasi-judicial determination").  It has been the general rule that government officials performing quasi-judicial functions are afforded absolute immunity for those functions.  <u>Tarter v. State</u>, 68 N.Y.2d 511, 518 (1986)(holding "logically, other neutrally positioned government officials, regardless of title, who are delegated judicial or quasi-judicial functions should also not be shackled with the fear of civil retribution for their acts").  In the <u>Newton</u> case, the Southern District of New York noted that "courts have

extended a cluster of immunities to protect the various participants in judicial-supervised trials, including…coroners." 738 F.Supp.2d at 406-07 citing Lambert v. Garlo, 19 Ohio App.3d 295 (1985); see also Mills v. Small, 446 F.2d 249, 249 (9th Cir. 1971)(finding that County medical examiner was acting in a quasi-judicial capacity and thus, immune from liability under 42 U.S.C. § 1983).

To this end, New York Courts have held that the exercise of a medical examiner's discretion in rending an opinion on cause of death is afforded immunity. Babi-Ali v. City of New York, 979 F.Supp. 268, 279 (S.D.N.Y. 1997). The rationale to support a finding of immunity is clear, a medical examiner is statutorily required to investigate certain deaths and report his/her findings to the District Attorney, as well as other government officials. Subjecting a medical examiner to lawsuits based on his cause of death determination, particularly on deaths he/she determines to be a homicide exposes the official to harassing litigation intended solely to impair his/her independent judgment.

In this respect, if an aggrieved party seeks to challenge a cause of death determination, they must bring an Article 78 proceeding under New York State Civil Practice Laws and Rules. Infante v. Dignan, 12 N.Y.3d 336 (2009). In the context of such a proceeding, the Court will examine whether the medical examiner's finding was arbitrary and capricious and/or an abuse of discretion." Id., 12 N.Y.3d at 339. Indeed, Plaintiff had this option. Plaintiff could have challenged Dr. Sikirica's cause of death determination by way of an Article 78 proceeding. Instead, he allowed the statute of limitations to pass, thereby waiving his right to challenge the determination. Plaintiff

10

should not now be afforded a second bite at the proverbial apple when he failed to pursue available remedies in State court.

Considering the precedent that a medical examiner's cause of death determination is deemed a quasi-judicial function, the rationale for affording quasi-judicial officers absolute immunity for actions taken in that capacity, and the ability to challenge a cause of death determination by way of an Article 78 proceeding, it is submitted that Dr. Sikirica's cause of death determination in this case is absolutely immune from liability under 42 U.S.C. § 1983.  Leib v. Paparo, 84 A.D.2d 538, 538, 443 N.Y.S.2d 98, 99 (2d Dept. 1981); Lambert v. Garlo, 19 Ohio App.3d 295 (1985); see also Mills v. Small, 446 F.2d 249, 249 (9th Cir. 1971); Salomon v. Mahoney, 271 A.D. 478, 480 (4th Dept. 1946),aff'd,297 N.Y. 643 (1947);  Infante v. Dignan, 12 N.Y.3d 336 (2009).

C. **In the Alternative, Dr. Sikirica Should Be Afforded Qualified Immunity for his Cause of Death Determination.**

Qualified immunity is afforded to public officials for performing discretionary official functions provided their actions do not "violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Doe v. Phillips, 81 F.3d 1204, 1211 (2d Cir. 1996).  Thus, even when the right in question is clearly established at the time that the alleged unlawful conduct occurred, an official is still entitled to immunity where it was objectively reasonable for him to believe that the conduct in question was lawful. Kenney v. Clay, 172 F. Supp. 3d 628, 637–38 (N.D.N.Y. 2016).

11

As discussed above, Plaintiff's allegations against Dr. Sikirica are fairly limited. Simply, Plaintiff claims that Dr. Sikirica based his medical opinion, at least in part, on the details of Plaintiff's illegally obtained confession and failed to acknowledge in his written report that Plaintiff's son had a bacterial infection at the time of death.  Notably, Plaintiff does not: allege that Dr. Sikirica knew the circumstances surrounding Plaintiff's confession or more important that the confession was obtained illegally.  Indeed, while Plaintiff challenged the admissibility of the confession at his first criminal trial, both the trial court and Appellate Division found held that the confession was admissible.  See, People v. Thomas, 22 N.Y.3d 629 (2014).  It was entirely reasonable for Dr. Sikirica to believe he could consider the confession in formulating his opinion.

Further, Plaintiff does not allege that Dr. Sikirica committed perjury, or knowingly falsified his autopsy report.  If anything, Plaintiff's allegations are that Dr. Sikirica's medical opinion did not comport with that of Plaintiff's own experts.  However, Dr. Sikirica was not the only physician to broach whether Plaintiff's son had incurred trauma related injuries.  The Court of Appeals specifically noted that the emergency room physician at Samaritan Hospital indicated that "intracranial injuries to be ruled out"; Plaintiff also alleges that the treating physician at Albany Medical Center initially diagnosed a "skull fracture" upon examination.  The fact that at least two other medical professionals raised concerns of head trauma in response to their examination of Plaintiff's son further supports the reasonableness of Dr. Sikirica's determination. Ultimately, the question is whether it was objectively reasonable for Dr. Sikirica to consider Plaintiff's statement describing how his son was injured in the preparation of his

autopsy report.  County Law § 674 calls for medical examiners to fully investigate the cause of death, which specifically includes fact-finding from witnesses.  County L. § 674(2).  There is no allegation that Dr. Sikirica had cause to believe that the statements made by Plaintiff were false.  Under these circumstances, Dr. Sikirica's actions were objectively reasonable and he should be afforded qualified immunity for his cause of death determination.

## POINT III

### PLAINTIFF HAS NOT SUFFICIENTLY ALLEGED MUNICIPAL LIABILITY AGAINST THE COUNTY OF RENSSELAER

Plaintiff claim for municipal liability against the County is based on a claim that the County failed to "adequately train and supervise" Dr. Sikirica.  To establish municipality liability for failure to train or supervise, Plaintiff must show (1) "that a policymaker knows "to a moral certainty" that employees will confront a given situation; (2), the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation; and (3) that the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights.  Walker v. City of New York, 974 F.2d 293, 297–98 (2d Cir. 1992).

With a broad stroke, Plaintiff alleges that Dr. Sikirica was "overworked, overburdened, overextended, and otherwise lacked objectivity, temperament, discretion, and disposition to be employed as the County's medical examiner, and to otherwise competently provide evidence and testify against criminal defendants in homicide and

13

other serious felony prosecutions." Plaintiff does not allege any facts in support of these conclusory allegations. Plaintiff also does not allege that it was because Dr. Sikirica was overworked or lacked the disposition to be a medical examiner that resulted in his alleged injury. Further, Plaintiff fails to assert any factual allegations tying Dr. Sikirica's alleged failing to Plaintiff's claimed constitutional violation. Delaney v. City of Albany, No. 1:12-CV-1575 LEK/RFT, 2014 WL 701637, at *5 (N.D.N.Y. 2014)( holding that complaint alleging municipal liability predicated on a failure to train/supervise must set forth specific allegations that tie the alleged misconduct to the failure to train.)

Addressing each element of municipal liability in turn: first, it is not improper for a medical examiner to speak with law enforcement officers prior to performing an autopsy. Traditionally, investigations of this nature, and far more involved, were performed by County medical examiners. People v. Molineux, 168 N.Y. 264 (1901). New York State County Law continues to envision that these investigations involve witness statements and subpoena records as part of a medical examiners duties. County L. §§ 674(2)(calling for a medical examiner to "fully investigate the essential facts concerning the death"); 674(4).

Moreover, there is no municipal liability for failing to train an employee on how to handle rare or unforeseen events. Id., 974 F.2d at 297; see also, Mejia v. City of New York, 228 F. Supp. 2d 234, 248 (E.D.N.Y. 2002). It is submitted that the fact that Plaintiff's statement given to police and considered by Dr. Sikirica was later found to be involuntarily is a "rare or unforeseen event".

Second, Plaintiff has not pled facts establishing that "the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation".  The situation, whether a medical examiner should consider a false confession in preparing a cause of death determination, involves a matter of common sense.  It is the equivalent of asking whether training is necessary to teach a police officer not to commit perjury or a district attorney to avoid prosecuting the innocent.  See, Walker, 974 F.2d at 299-300 (stating that "where the proper response-to follow one's oath, not to commit the crime of perjury, and to avoid prosecuting the innocent-is obvious to all without training or supervision, then the failure to train or supervise is generally not 'so likely' to produce a wrong decision as to support an inference of deliberate indifference…").

Plaintiff alleges that the County was on notice of "claims" lodged against Dr. Sikirica.  A mere allegation of notice, without more, is insufficient to state a cause of action for municipal liability.  .  See, Simms v. City of New York, 480 F. App'x 627, 630 (2d Cir. 2012)(holding that the plaintiff did not allege municipal liability when the Complaint only includes reference to the other complaints without alleging that those complaints involve similar violations of their constitutional rights or that violations were actually found to have occurred).  Plaintiff is silent as to the nature of the complaints or whether any of the complaints have been sustained.

Plaintiff also fails to allege any facts showing that Dr. Sikirica has previously considered improper information that affected his professional cause of death determination.  Nor are there allegations that the County is aware or should be aware of

15

such prior conduct.  Plaintiff's failure to tie together his allegations of failure to train/supervise the County's medical examiner with his constitutional violation is fatal to this claim.  Knox v. Cty. of Ulster, No. 1:11-CV-0112 GTS/CFH, 2013 WL 286282, at *12 (N.D.N.Y. 2013)(holding that the plaintiff's failure "to identify any other occurrences of similar conduct which would have alerted the County to the need for training or supervision" requires dismissal of his claim).

## CONCLUSION

Due to the foregoing, Defendants County of Rensselaer and Dr. Michael Sikirica request that the Court grant the instant Motion to Dismiss.

16