UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------------X

ADRIAN THOMAS,

                                        Plaintiff,                        17 CV 626

         -against-                                         (GTS) (DJS)

CITY OF TROY, ADAM R. MASON, Individually, RONALD
FOUNTAIN, Individually, TIM COLANERI, Individually,
RENSSELAER COUNTY, and MICHAEL SIKIRICA,
Individually,

                                       Defendants.

-------------------------------------------------------------------------------X

**MEMORANDUM OF LAW IN OPPOSITION TO THE TROY DEFENDANTS'
MOTION FOR DISMISSAL UNDER RULE 12(b)(6)**

BRETT H. KLEIN, ESQ., PLLC
*Attorneys for the Plaintiff*
305 Broadway, Suite 600
New York, New York 10007
(212) 335-0132

# TABLE OF CONTENTS

TABLE OF AUTHORITIES................................................................................................ii

PRELIMINARY STATEMENT.........................................................................................1

RELEVANT FACTS..........................................................................................................1

STANDARD OF REVIEW................................................................................................9

ARGUMENT......................................................................................................................9

     I.     Plaintiff's Claim for Malicious Prosecution is not Time-Barred .........................9

     II.    Plaintiff has Rebutted the Presumption of Probable Cause............................11

     III.    Plaintiff's Right to Fair Trial Claim is not Time-Barred...................................12

     IV.    Plaintiff's Failure to Intervene Claim is not Time-Barred...............................14

     V.    Plaintiff's Conspiracy Claim is not Time-Barred...........................................14

     VI.    Plaintiff's Municipal Liability Claim is not Time-Barred...............................15

     VII.    Plaintiff's Claim for Municipal Liability is Plausible on its Face......................15

     VIII.    Defendants are not Entitled to Qualified Immunity.......................................17

CONCLUSION.................................................................................................................20

# TABLE OF AUTHORITIES

**Cases**

*Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113 (2d Cir. 2004) .......................................... 16

*Anilao v. Spota*, 774 F.Supp.2d 457 (E.D.N.Y. 2011).................................................................. 19

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009).......................................................................................... 9

*Bailey v. City of New York*, 79 F.Supp.3d 424 (E.D.N.Y. 2015)............................................ 11, 13

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)........................................................................... 9

*Blake v. Race*, 487 F.Supp.2d 187 (E.D.N.Y. 2007) ................................................................... 12

*Cantey v. City of New York*, 10 CV 4043 (JPO), 2012 WL 6771342 (S.D.N.Y. Dec. 11, 2012) 16, 17

*City of Canton, Ohio v. Harris*, 489 U.S. 378 (1989)................................................................... 16

*Coggins v. County of Nassau*, 988 F.Supp.2d 231 (E.D.N.Y. 2013)............................................ 14

*Colon v. City of New York*, 60 N.Y.2d 78 (N.Y. 1983) ................................................................. 11

*Gordon v. City of New York*, 14 CV 6115 (JPO), 2015 WL 3473500 (S.D.N.Y. June 2, 2015).. 17

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982)................................................................................... 17

*Heck v. Humphrey*, 512 U.S. 477 (1994)...................................................................................... 13

*Hyman v. Abrams*, 630 Fed.Appx. 40 (2d Cir. 2015) ................................................................... 18

*Jones v. City of Chicago*, 856 F.2d 985 (7th Cir. 1988) ............................................................... 12

*Jones v. Westchester Cnty. Dep't of Corr. Med. Dep't*, 557 F.Supp.2d 408 (S.D.N.Y. 2008)16, 17

*Jovanovic v. City of New York*, No. 04 Civ. 8437 (PAC), 2006 WL 2411541 (S.D.N.Y. Aug. 17, 2006) ....................................................................................................................................... 10, 13

*Manganiello v. City of New York*, 612 F.3d 149 (2d Cir. 2010)......................................... 10, 11, 12

*Matthews v. City of New York*, 889 F.Supp.2d 418 (E.D.N.Y. 2012)....................................... 12, 19

*McKenna v. Wright*, 386 F.3d 432 (2d Cir. 2004) ........................................................................ 18

*Murphy v. Lynn*, 53 F.3d 547 (2d Cir. 1995)................................................................................ 10

*Niemann v. Whalen*, 911 F.Supp. 656 (S.D.N.Y. 1996) ............................................................... 18

*Poux v. Cnty. of Suffolk*, 09 CV 3081(SJF)(WDW), 2010 WL 1849279 (E.D.N.Y. May 4, 2010) .................................................................................................................................................... 16

*Ricciuti v. N.Y.C. Transit Authority*, 124 F.3d 123 (2d Cir. 1997)............................................... 19

*Roberites v. Huff*, No. 11–CV–52ISC, 2012 WL 1113479 (W.D.N.Y. Mar. 28, 2012).............. 13

*Singleton v. City of New York*, 632 F.2d 185 (2d Cir.1980), *cert. denied*, 450 U.S. 920 (1981).. 10

*Smalls v. City of New York*, 181 F.Supp.3d 178 (E.D.N.Y. 2016) ..................................... 10, 11, 13

*Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104 (2d Cir. 2008)...... 9

*Weaver v. Brenner*, 40 F.3d 527 (2d Cir. 1994) .............................................................. 17, 18, 19

*Wray v. City of New York*, 490 F.3d 189 (2d Cir. 2009)............................................................... 16

*Zahrey v. Coffey*, 221 F.3d 342 (2d Cir. 2005).............................................................................. 19

## PRELIMINARY STATEMENT

Plaintiff Adrian Thomas respectfully submits this memorandum of law in opposition to defendants City of Troy, Adam R. Mason, Ronald Fountain, and Tim Colaneri's (hereinafter "Troy defendants" or "defendants") motion to dismiss plaintiff's claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons that follow, the Troy defendants' motion to dismiss should be denied.

## RELEVANT FACTS

In September 2008, Thomas, a 26-year-old father with no criminal record, lived with his wife, Wilhemina Hicks, and their seven children. *See* ECF Doc. 31 ¶¶ 24-25, 27. The couple's two youngest children, Matthew and his twin brother, were four months old. *Id.* at ¶ 26. They had been born prematurely and, as such, were more vulnerable to illness than full-term babies. *Id.* at ¶ 27. On the morning of September 21, 2008, Matthew was ill. *Id.* at ¶ 29. He was running a fever and had experienced diarrhea and vomiting for a few days. *Id.* Hicks did not think Matthew's symptoms were particularly severe, but at about 8:00 a.m., Matthew became limp and unresponsive. *Id.* Hicks called an ambulance. *Id.*

Matthew was transported to Samaritan Hospital in Troy, New York. *Id.* at ¶ 30. There, he presented with a range of symptoms that strongly suggested a bacterial infection, including a low white blood cell count, irregular heartbeat, low blood pressure, severe dehydration, and respiratory failure. *Id.* The treating emergency room doctor noted the most likely differential diagnosis to be septic shock. *Id.* Blood tests to confirm sepsis were performed, but their results were not immediately available. *Id.* Meanwhile, Matthew was placed on massive doses of antibiotics. *Id.* Later that day, Matthew was transferred to the Pediatric Intensive Care Unit at Albany Medical Center, where he was treated by Dr. Walter Edge. *Id.* at ¶ 31. On information and belief, Dr. Edge

had been on duty and had not slept for nearly two days. *Id.*

While Matthew was being treated at Albany Medical Center, the evidence that he was suffering from septic shock caused by a massive bacterial infection continued to build. *Id.* at ¶ 32. His white blood cell count was very low, he had decreased clotting mechanisms, he failed to maintain oxygen saturation, among other signs. *Id.* Dr. Edge nevertheless falsely concluded, based on no credible medical evidence, that Matthew had suffered a skull fracture and was the victim of a physical assault. *Id.* at ¶ 33. Dr. Edge was completely wrong and by the next day, more thorough testing had confirmed that Matthew's skull had not been fractured after all. *Id.* at ¶ 34. A complete skeletal survey found no fractures, no contusions, no abrasions, and no deformities of any kind. *Id.*

Nonetheless, working from Dr. Edge's initial false diagnosis on September 21, but otherwise having no reason to believe Mr. Thomas had any involvement in causing Matthew's injuries, TPD defendants took Mr. Thomas into police custody and set out to obtain a coerced false confession from him to justify his arrest and prosecution for a crime he did not commit. *Id.* at ¶ 35. The defendant TPD officers took Mr. Thomas to an interrogation room at the Troy Central Police Station, where they interrogated Thomas, or stood by while he was interrogated without intervening in the illegal techniques employed, for a total of about 9 1/2 hours, broken into an initial two-hour and a subsequent 7 1/2-hour session. *Id.* at ¶ 37. In between, Thomas, who had expressed suicidal thoughts during the first session, was involuntarily hospitalized for approximately 15 hours in a secure psychiatric unit. *Id.* at ¶ 38. Thomas was released from the psychological hospital to his interrogators, defendants Mason and Fountain, who immediately escorted him back to the police station where the interrogation resumed. *Id.* at ¶ 39. Thomas slept no more than an hour and a half between the two interrogation sessions. *Id.*

During Thomas' prolonged interrogation, the TPD defendants engaged in various coercive tactics, as detailed extensively in plaintiff's complaint, to secure a false confession from plaintiff, which the TPD defendants ensured was consistent with the initial false diagnosis received from Dr. Edge. *Id.* at ¶¶ 40-48. Ultimately, after steadfastly denying injuring his son, Thomas succumbed to the illegal interrogation tactics and, consistent with the TPD defendants' directions, demonstrated on video throwing his son down on a mattress and admitted under circumstances precisely resembling those specified by Mason, that he threw Matthew down on his mattress on the Wednesday, Thursday, and Saturday preceding the child's hospitalization. *Id.* at ¶ 49. The TPD defendants knew that the only purported evidence linking Mr. Thomas to Matthew's death was the coerced and suggested false confession that they extracted from him after he had for hours denied any wrongdoing. *Id.* at ¶ 50. Based on said confession, Thomas was arrested on September 23, 2008, booked and incarcerated at the Rensselaer County Jail, and then arraigned on false criminal charges that he had murdered Matthew. *Id.* at ¶ 51.

Thereafter, on September 25, 2008, the Rensselaer County medical examiner, Dr. Michael Sikirica, met with defendant Mason, and then performed the autopsy of Matthew in the presence of defendant Mason and the Rensselaer County District Attorney, Richard R. McNally, Jr., as well as Assistant District Attorney Christa Book. *Id.* at ¶ 52. Notwithstanding the overwhelming medical evidence that Matthew died of septic shock caused by a bacterial infection, and notwithstanding that Dr. Sikirica would later admit at Mr. Thomas' trials that he was aware that Matthew had streptococcus pneumonia bacteria in his bloodstream suggesting sepsis, Dr. Sikirica failed to document sepsis in his list of anatomic diagnoses in his autopsy report. *Id.* at ¶ 53. Instead, in the official County autopsy report authored by Dr. Sikirica, and which was conveyed to prosecutors and utilized in the prosecution of Adrian Thomas, Dr. Sikirica falsely recorded the

6

cause of Matthew's death to be severe closed head injuries with cerebral edema due to blunt force trauma, and the manner of death to be a homicide. *Id.* at ¶ 54. Dr. Sikirica rendered this false medical opinion that Matthew died of head trauma rather than sepsis to ensure consistency with Thomas' false coerced confession, and otherwise in furtherance of a conspiracy with the TPD defendant officers to falsely accuse and maliciously prosecute Mr. Thomas for the murder of his child. *Id.* at ¶ 55.

On September 26, 2008, the day after defendant Sikirica conducted the autopsy in the presence of defendant TPD officers and Rensselaer County prosecutors, Mr. Thomas was indicted by a grand jury. *Id.* at ¶ 56. His criminal case proceeded to trial in October 2009 under Rensselaer County Case Number 08-1074. *Id.* at ¶ 57. The prosecution, led by Ms. Book, built its case around Thomas' videotaped coerced false confession and the autopsy findings of Dr. Sikirica, as evidenced by Ms. Book's opening statement to the jury. *Id.* at ¶ 58. In addition, the prosecution showed the jury the taped demonstration of Thomas throwing an object on the floor to illustrate how he supposedly threw his son onto the bed. *Id.* Dr. Sikirica also testified, and while he for the first time acknowledged that Matthew was suffering from sepsis at the time of his death, Dr. Sikirica again put forth his false diagnosis that Matthew died of head trauma. *Id.* at ¶ 59. Tragically, the jury found Thomas guilty of second degree murder. He was sentenced to 25 years to life in prison. *Id.* at ¶ 61.

Thereafter, in February 2014, the Court of Appeals reversed Thomas's conviction, finding the confession was coerced, involuntary, and therefore unconstitutional under the totality of the circumstances because the array of "highly coercive deceptions" used by the interrogating detectives. *People v. Thomas*, 22 N.Y.3d 629, 642 (2014). *Id.* at ¶ 62. In May 2014, Thomas was retried. *Id.* at ¶ 63. At the second trial, the prosecution relied primarily on Dr. Sikirica's false

findings, as set forth in the official autopsy report, that the cause of Matthew's death was a severe closed head injury with cerebral edema due to blunt force trauma, and that the manner of death was a homicide. *Id.* at ¶ 64. The defense, however, conclusively proved through the uncontroverted medical evidence and expert testimony that Matthew suffered no recent acute trauma, and rather that he died of septic shock caused by a bacterial infection, to wit: streptococcus pneumonia. CT scans of Matthew's brain proved that he did not in fact suffer subdural hematomas. The CT report itself did not mention subdural hematomas or even note the presence of blood. *Id.* at ¶ 65. The gap between the skull and brain clearly is mostly water, not blood. And dura cross-section slides confirmed the presence of small amounts of blood around Matthew's brain for weeks—a fact that was flatly inconsistent with the prosecution's theory that Thomas assaulted him on or shortly before September 21, 2008. *Id.* The second jury acquitted Thomas on June 12, 2014. *Id.* at ¶ 66.

Plaintiff further alleges that all of the above occurred, in pertinent part, as a direct result of the unconstitutional policies, customs or practices of the City of Troy, including, without limitation, the inadequate screening, hiring, retaining, training and supervising its employees, and the City of Troy's *de facto* policy of engaging in unlawful interrogation tactics that resulted in or were likely to result in coerced false confessions, and that the aforesaid event is not an isolated incident. *Id.* at ¶¶ 68-69. Defendant City of Troy is aware from sources that include lawsuits, notices of claims, complaints, news reports, internal investigations, and failed prosecutions, that many TPD officers, including the defendants, engage in misconduct, and that they otherwise engage in unlawful interrogation techniques pursuant to TPD policy, custom or practice. *Id.* at ¶ 69. Defendant City of Troy is further aware that such improper training has often resulted in a deprivation of civil rights. *Id.* at ¶ 70. Despite such notice, defendant City of Troy has failed to

take corrective action. This failure caused the officers in the present case to violate the plaintiff's civil rights. *Id.* Moreover, upon information and belief, defendant City of Troy was aware prior to the incident, that the individual defendants lacked the objectivity, temperament, maturity, discretion, and disposition to be employed as police officers. *Id.* at ¶ 71. Despite such notice, defendant City of Troy has retained these officers, and failed to adequately train and supervise them. *Id.*

## STANDARD OF REVIEW

In considering a Fed. R. Civ. P. 12(b)(6) motion to dismiss, a court must "accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party." *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir. 2008). To withstand the motion, the plaintiff's complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* Facial plausibility in this context does not amount to "a probability requirement" rather, it requires a showing of "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted).

## ARGUMENT

### POINT I
### PLAINTIFF'S CLAIM FOR MALICIOUS PROSECUTION IS NOT TIME-BARRED

Defendants claim that plaintiff's malicious prosecution claim against the City defendants is time-barred, arguing that the statute of limitations began to run on February 20, 2014, the date

the Court of Appeals suppressed plaintiff's confession. Defendants argument should be rejected because plaintiff's malicious prosecution claim did not accrue until he was acquitted after his second trial. *See Jovanovic v. City of New York*, No. 04 Civ. 8437 (PAC), 2006 WL 2411541, *12 (S.D.N.Y. Aug. 17, 2006). "To establish a malicious prosecution claim under New York law, a plaintiff must prove (1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010) (internal quotations omitted). The statute of limitations period for a § 1983 claim is controlled by New York law and is the same as for a personal injury action, which is three years pursuant to New York C.P.L.R. § 214. *See Smalls v. City of New York*, 181 F.Supp.3d 178, 184 (E.D.N.Y. 2016). For "claims based in malicious prosecution, this period starts to run only when the underlying criminal action is conclusively terminated. *Murphy v. Lynn*, 53 F.3d 547, 548 (2d Cir. 1995) (citing *Singleton v. City of New York*, 632 F.2d 185, 189, 193 (2d Cir.1980), *cert. denied*, 450 U.S. 920 (1981)).

Here, plaintiff's malicious prosecution did not accrue until his acquittal, pursuant to clear Second Circuit precedent. *See Murphy*, 53 F.3d at 548. Defendants attempt to circumvent this clear rule by arguing, incorrectly, that plaintiff's malicious prosecution claim against the City defendants flows solely from the Troy defendants' coerced confession. This argument, however, ignores plaintiff's additional allegations in his amended complaint that the Troy defendants thereafter met with and conspired with defendant Sikirica to ensure that Sikirica issued an autopsy report which was consistent with their coerced confession in furtherance of their malicious prosecution of plaintiff. *See* ECF Doc. 31 ¶¶ 52, 55-56. Although the coerced confession was not utilized in the second trial, the false autopsy findings, which flowed directly from the coerced

confession, and which were issued in furtherance of the defendants' effort to maliciously prosecute plaintiff, were. Regardless, insofar as a favorable termination is an element of plaintiff's malicious prosecution claim, plaintiff's claim clearly did not accrue until after his acquittal, and would have been dismissible had plaintiff attempted to file the claim sooner. Therefore, because plaintiff filed his complaint on June 12, 2017, within three years of the date of his acquittal, his malicious prosecution was timely filed. In sum, accepting plaintiff's allegations as true, the Court should reject defendants' argument that plaintiff's malicious prosecution claim accrued when the Court of Appeals suppressed the confession because the malicious prosecution of plaintiff by the City defendants was a single continuous event which did not accrue until plaintiff was officially acquitted of all charges via the jury's not guilty verdict.

## POINT II
## PLAINTIFF HAS REBUTTED THE PRESUMPTION OF PROBABLE CAUSE

Defendants argue that plaintiff has failed to rebut the presumption of probable cause created by plaintiff's indictment by a grand jury. "[T]he existence of probable cause is a complete defense to a claim of malicious prosecution in New York and indictment by a grand jury creates a presumption of probable cause." *See Manganiello*, 612 F.3d at 161-62 (internal quotations and citation omitted). The presumption of probable cause may, however, be rebutted "by evidence that the indictment was procured by 'fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith.'" *Id.* at 161 (quoting *Colon v. City of New York*, 60 N.Y.2d 78, 83 (N.Y. 1983)). Allegations that a police officer coerced a confession and/or aided in the fabrication of evidence which was forwarded to prosecutors and grand jurors will serve to rebut the presumption of probable cause associated with the grand jury indictment. *See e.g.*, *Smalls*, 181 F.Supp.3d at 186-87; *Bailey v. City of New York*, 79 F.Supp.3d 424, 457 (E.D.N.Y. 2015);

11

*Matthews v. City of New York*, 889 F.Supp.2d 418, 440 (E.D.N.Y. 2012); *Manganiello*, 612 F.3d at 162.

Here, plaintiff's amended complaint alleges that the Troy defendants coerced his confession and conspired with defendant Sikirica to issue a falsified autopsy report which tracked the coerced confession, resulting in plaintiff's indictment by a grand jury. *See* ECF Doc. 31 ¶¶ 35-56. Plaintiff has alleged sufficient evidence that the indictment was thus procured by fraud, perjury, and police conduct undertaken in bad faith, to rebut the presumption of probable cause associated with the grand jury indictment. Furthermore, defendants cannot hide behind the decision of the District Attorney to prosecute when it was the Troy defendants who allegedly coerced plaintiff's confession *and* fed facts to defendant Sikirica resulting in his issuance of a fabricated autopsy report consistent with said confession. *See Blake v. Race*, 487 F.Supp.2d 187, 211 (E.D.N.Y. 2007) (citing *Jones v. City of Chicago,* 856 F.2d 985, 994 (7th Cir. 1988) ("[A] prosecutor's decision to charge, a grand jury's decision to indict, a prosecutor's decision not to drop charges but to proceed to trial-none of these decisions will shield a police officer who deliberately supplied misleading information that influenced the decision.") Furthermore, the fact that plaintiff's prosecution continued after the Court of Appeals suppressed the confession has no bearing on this analysis insofar as the Troy defendants also participated in the creation of the falsified autopsy findings, which played an integral part in the re-trial of plaintiff, and which also serves to rebut the resumption of probable cause.

## POINT III
### PLAINTIFF'S RIGHT TO FAIR TRIAL CLAIM IS NOT TIME-BARRED

Defendants assert plaintiff's right to fair trial claim is time-barred, arguing that the statute of limitations began to run as of the date plaintiff was convicted after his first trial. Defendants

argument should be rejected because plaintiff's claims for right to fair trial did not accrue until he was acquitted after his second trial. *See Jovanovic v. City of New York*, No. 04 Civ. 8437 (PAC), 2006 WL 2411541, *12 (S.D.N.Y. Aug. 17, 2006). The statute of limitations period for a § 1983 claim is controlled by New York law and is the same as for a personal injury action, which is three years pursuant to New York C.P.L.R. § 214. *See Smalls*, 181 F.Supp.3d at 184. However, federal law governs when the limitations period begins to run. *Id.* While defendants are correct that a § 1983 claim ordinarily accrues when the plaintiff knows or has reason to know of the injury which forms the basis of his claim, this is not the case where the claim would undermine the validity of the conviction itself. *Id.* (relying on *Heck v. Humphrey*, 512 U.S. 477, 489–90 (1994)). Because "[a] fabrication of evidence claim, like a malicious prosecution claim, seeks to 'impugn the validity of [the] extant conviction'" it cannot be asserted until after a conviction or sentence has been invalidated. *Id.* (quoting *Roberites v. Huff*, No. 11–CV–52ISC, 2012 WL 1113479, at *3-4 (W.D.N.Y. Mar. 28, 2012) (dismissing fabrication of evidence claim as premature where direct appeal was still pending)). *See also, Bailey*, 79 F.Supp.3d at 455 (holding that the statute of limitations accrued on the date plaintiff's conviction was overturned because where a plaintiff's right to a fair trial claim would necessarily impugn the validity of his conviction, "the complaint must be dismissed unless [he] can demonstrate that the conviction or sentence has already been invalidated.")

Had plaintiff asserted his right to fair trial claim at any point prior to his acquittal after his second trial, at which point the indictment against him was finally dismissed with prejudice, his claim would have been subject to dismissal under *Heck* because it would necessarily impugn the validity of his conviction and would have created a risk of inconsistent verdicts. *Smalls*, 181 F.Supp.3d at 184; *Jovanovic*, 2006 WL 2411541, *12; *Bailey*, 79 F.Supp.3d at 455. Again, in

arguing that plaintiff's right to fair trial claim accrued earlier, the Troy defendants focus only on plaintiff's coerced confession, ignoring plaintiff's allegations regarding their involvement in the creation of the fabricated autopsy findings, and which were used in both the first and second trials. Therefore, plaintiff's right to fair trial claim did not accrue until he was acquitted on June 12, 2014. *See id.* Because plaintiff filed his complaint on June 12, 2017, within three years of the date of his acquittal, his right to fair claim was timely filed.

## POINT IV
### PLAINTIFF'S FAILURE TO INTERVENE CLAIM IS NOT TIME-BARRED

Defendants sole argument as to why plaintiff's failure to intervene claim should be dismissed is that it purportedly flows only from plaintiff's alleged coerced confession. Again, plaintiff also alleges that the City defendants aided in the fabrication of the autopsy findings, which played a part in plaintiff's first and second trials. Therefore, to the extent that any of the City defendants may not have directly participated in the malicious prosecution, they still had duty to intervene which continued up and until plaintiff was acquitted after his second trial. *See Coggins v. County of Nassau*, 988 F.Supp.2d 231, 244-45 (E.D.N.Y. 2013). Based on the foregoing, plaintiff submits that his failure to intervene claim was timely filed.

## POINT IV
### PLAINTIFF'S CONSPIRACY CLAIM IS NOT TIME-BARRED

Defendants sole argument as to why plaintiff's conspiracy claim should be dismissed is also that it purportedly flows only from plaintiff's alleged coerced confession. This is a misstatement of plaintiff's conspiracy claim, which is that the Troy defendants conspired with defendant Sikirica to issue false autopsy findings and to undermine Adrian Thomas' rights to be free from malicious prosecution and from the fabrication of evidence and/or deprivation of his

right to a fair trial. *See* ECF Doc. 31 ¶¶ 52-56, 105-106. The last overt act relevant to this claim would be the use of the fabricated medical findings at trial, in furtherance of the defendants' effort to undermine plaintiff's rights to be free from malicious prosecution and fabrication of evidence and/or deprivation of his right to a fair trial. Based on the foregoing, plaintiff submits that his conspiracy claim was timely filed within three years of his acquittal after his second trial.

## POINT IV
### PLAINTIFF'S MUNICIPAL LIABILITY CLAIM IS NOT TIME-BARRED

Defendants also argue plaintiff's municipal liability claim should be dismissed because it too purportedly flows only from plaintiff's alleged coerced confession. This oversimplifies plaintiff's municipal liability claim. Plaintiff's municipal liability claim is also based on allegations that the City of Troy failed to train and supervise its employees, in addition to allowing a policy of engaging in unlawful interrogation tactics that resulted in or were likely to result in coerced false confessions. *See* ECF Doc. 31 ¶¶ 68-69. Plaintiff further alleges that this failure to train, the policy of coercing confessions, and the failure to take corrective action, led to plaintiff being subjected to the constitutional violations alleged herein, namely being maliciously prosecuted and denied his right to fair trial. *Id.* at ¶¶ 71-72. For the reasons stated *supra*, at Points I and III, insofar as plaintiff's malicious prosecution and denial of right to fair trial claims were timely filed, so was his municipal liability claim.

## POINT VI
### PLAINTIFF'S CLAIM FOR MUNICIPAL LIABILITY IS PLAUSIBLE ON ITS FACE

Defendants also move to dismiss plaintiff's municipal liability claim on the grounds that is it is purportedly insufficiently pled. Federal claims against a municipality, otherwise known as "*Monell* claims", "are not subject to a heightened pleading standard and need only comply with

the notice pleading requirement of Rule 8(a)(2) of the Federal Rules of Civil Procedure, *i.e.* that it include 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Cantey v. City of New York*, 10 CV 4043 (JPO), 2012 WL 6771342, *2-3 (S.D.N.Y. Dec. 11, 2012) (citing *Poux v. Cnty. of Suffolk*, 09 CV 3081(SJF)(WDW), 2010 WL 1849279, at *11 (E.D.N.Y. May 4, 2010); *see also, Jones v. Westchester Cnty. Dep't of Corr. Med. Dep't*, 557 F.Supp.2d 408, 417 (S.D.N.Y. 2008). In order "[t]o hold a city liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2009). Furthermore, the inadequacy of police training may serve as the basis for § 1983 liability "where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants" such [that] the shortcoming [can] be properly thought of as a city 'policy or custom.'" *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 388–89 (1989). At the pleading stage, "a plaintiff need only plead that the city's failure to train caused the constitutional violation," insofar as "it unlikely that a plaintiff would have information about the city's training programs or about the cause of the misconduct at the pleading stage." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 130 n.10 (2d Cir. 2004).

Here, plaintiff sufficiently pled that his constitutional violations occurred as a direct result of the unconstitutional policies, customs or practices of the City of Troy, including, without limitation, the inadequate screening, hiring, retaining, training and supervising its employees, and the City of Troy's *de facto* policy of engaging in unlawful interrogation tactics that resulted in or were likely to result in coerced false confessions, and that the aforesaid event is not an isolated incident. *See* ECF Doc. 31 at ¶¶ 68-69. Plaintiff further alleged, that defendant City of Troy is

aware from sources that include lawsuits, notices of claims, complaints, news reports, internal investigations, and failed prosecutions, that many TPD officers, including the defendants, engage in misconduct, and that they otherwise engage in unlawful interrogation techniques pursuant to TPD policy, custom or practice. *Id.* at ¶ 69. Moreover, defendant City of Troy is aware that such improper training has often resulted in a deprivation of civil rights, and despite such notice, defendant City of Troy has failed to take corrective action, causing the officers in the present case to violate the plaintiff's civil rights. *Id.* at ¶ 70. Moreover, upon information and belief, defendant City of Troy was aware prior to the incident, that the individual defendants lacked the objectivity, temperament, maturity, discretion, and disposition to be employed as police officers. *Id.* at ¶ 71. Despite such notice, defendant City of Troy has retained these officers, and failed to adequately train and supervise them. *Id.*

Based on the foregoing, and drawing all inferences in plaintiff's favor, plaintiff has stated a plausible *Monell* claim, and therefore dismissal of his claim at this stage is premature. This is particularly so considering that plaintiff has not yet had an opportunity to complete discovery, which is primarily in the sole possession of the City, which would be necessary to further flesh out his claim. *See Cantey*, 2012 WL 6771342 at *5. *Jones*, 557 F. Supp.2d at 417; *Gordon v. City of New York*, 14 CV 6115 (JPO), 2015 WL 3473500, at *16 (S.D.N.Y. June 2, 2015).

### POINT VII
### DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY

"[P]ublic officials are immune from § 1983 civil rights suits brought by an aggrieved citizen when their 'conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *See Weaver v. Brenner*, 40 F.3d 527, 532-33 (2d Cir. 1994) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "[U]sually, the defense

of qualified immunity cannot support the grant of a Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted." *Hyman v. Abrams*, 630 Fed.Appx. 40, 42 (2d Cir. 2015). However, "a district court may grant a Rule 12(b)(6) motion on the ground of qualified immunity if 'the facts supporting the defense appear on the face of the complaint." *Id. See also, McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004) ("[a]n affirmative defense may be raised by a pre-answer motion to dismiss under Rule 12(b)(6), without resort to summary judgment procedure, if the defense appears on the face of the complaint.") Furthermore, "the motion may be granted only where 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.'" *Id.* It has been clearly established since 1989 that police cannot "lawfully coerce incriminating statements from an in-custody criminal suspect." *See Weaver*, 40 F.3d at 533-34. As explained in *Weaver*, "[t]he right of a citizen to be free from such offensive police behavior is guaranteed by the Due Process Clause of the Fourteenth Amendment, which prohibits police conduct that undermines the requirements of decency and fairness implicit in the concept of ordered liberty." *Id.* at 534. *See also, Niemann v. Whalen*, 911 F.Supp. 656, 673 (S.D.N.Y. 1996) ("There is no room for dispute that on July 3, 1992, it was clearly established that the authorities could not lawfully coerce a confession from plaintiff or use it against her in a criminal proceeding.")

Here, plaintiff alleges in his amended complaint that the Troy defendants coerced a falsified confession from plaintiff and thereafter provided information to, and met with, defendant Sikirica, who performed the autopsy of Matthew, and thereafter issued false findings consistent with the coerced confession, and otherwise in furtherance of a conspiracy with the Troy defendant officers to falsely accuse and maliciously prosecute plaintiff for the murder of his child. *See* ECF Doc. 31 at ¶¶ 54-55. Taking these allegations as true, and drawing all inferences in plaintiff's

18

favor, the defense of qualified immunity does not appear on the face of the amended complaint and therefore defendants' motion must be denied. *See Matthews*, 889 F.Supp.2d at 441 (denying "qualified immunity because no reasonable officer could believe that coercing a confession from an accused by withholding medical treatment from an injured family member and using the coerced confession to prosecute the accused is constitutional."); *Anilao v. Spota*, 774 F.Supp.2d 457, 492-93 (E.D.N.Y. 2011) (holding that "if plaintiffs prove their allegations that defendants Spota and Lato falsified evidence during the investigation of plaintiffs and such falsification lead to the deprivation of plaintiffs' liberty in the form of an arrest, defendants would not be entitled to qualified immunity.") (citing *Zahrey v. Coffey*, 221 F.3d 342, 357 (2d Cir. 2005) (where plaintiff put forth sufficient allegations that he was deprived of liberty as a result of prosecutor's fabrication of evidence during the investigation of plaintiff, court could not grant defendant prosecutor qualified immunity as a matter of law on a motion to dismiss). Furthermore, defendants are incorrect that it was not clearly established at the time of these events that it was unconstitutional to coerce a confession, or that an officer could reasonably believe such conduct to be constitutional. *See e.g., Weaver*, 40 F.3d at 533-34; *Ricciuti v. N.Y.C. Transit Authority*, 124 F.3d 123, 130 (2d Cir. 1997); *Matthews*, 889 F.Supp.2d at 441. Based on the foregoing, defendants are not entitled to qualified immunity on the face of the amended complaint.

# CONCLUSION

For the reasons set forth above, defendants motion to dismiss should be denied, together with such other relief to plaintiff that the Court deems just and proper.

Dated: New York, New York
December 4, 2017

BRETT H. KLEIN, ESQ., PLLC
Attorneys for Plaintiff
305 Broadway, Suite 600
New York, New York 10007
(212) 335-0132

By: ___ s/ Brett Klein _____
BRETT H. KLEIN (BK4744)