UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------------X

ADRIAN THOMAS,

                                    Plaintiff,                17 CV 626

           -against-                            (GTS) (DJS)

CITY OF TROY, ADAM R. MASON, Individually, RONALD
FOUNTAIN, Individually, TIM COLANERI, Individually,
RENSSELAER COUNTY, and MICHAEL SIKIRICA,
Individually,

                                 Defendants.

-------------------------------------------------------------------------------X

## MEMORANDUM OF LAW IN OPPOSITION TO THE COUNTY DEFENDANTS' MOTION FOR PARTIAL DISMISSAL UNDER RULE 12(b)(6)

BRETT H. KLEIN, ESQ., PLLC
*Attorneys for the Plaintiff*
305 Broadway, Suite 600
New York, New York 10007
(212) 335-0132

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.............................................................................................ii

PRELIMINARY STATEMENT....................................................................................1

RELEVANT FACTS......................................................................................................1

STANDARD OF REVIEW............................................................................................10

ARGUMENT...................................................................................................................11

    I.      Plaintiff's Claims against Sikirica for Malicious Prosecution and Fabrication of Evidence are not Time-Barred .................................................................................11

    II.     Defendant Sikirica is not Entitled to Immunity.............................................13

         A.  Defendant Sikirica is not entitled to Absolute Immunity.............................13

         B.  Defendant Sikirica is not entitled to Qualified Immunity.............................15

    III.    Plaintiff's Claim for Municipal Liability is Plausible on its Face.........................16

CONCLUSION...............................................................................................................19

# TABLE OF AUTHORITIES

**Cases**

*Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113 (2d Cir. 2004) .......................................... 17

*Anilao v. Spota*, 774 F.Supp.2d 457 (E.D.N.Y. 2011) .......................................................... 14, 16

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ..................................................................................................................................... 11

*Bailey v. City of New York*, 79 F.Supp.3d 424 (E.D.N.Y.2015) .............................................. 12

*Buckley v. Fitzsimmons*, 509 U.S. 259 (1993) ..................................................................... 13, 14

*Cantey v. City of New York*, 10 CV 4043 (JPO), 2012 WL 6771342 (S.D.N.Y. Dec. 11, 2012) ................................................................................................................................ 16, 18

*City of Canton, Ohio v. Harris*, 489 U.S. 378 (1989) ............................................................... 17

*Cornejo v. Bell*, 592 F.3d 121 (2d Cir. 2010) ........................................................................... 13

*Gordon v. City of New York*, 14 CV 6115 (JPO), 2015 WL 3473500 (S.D.N.Y. June 2, 2015).. 18

*Heck v. Humphrey*, 512 U.S. 477 (1994) .................................................................................. 12

Hill v. City of New York, 45 F.3d 653 (2d Cir. 1995) ................................................................ 14

*Hyman v. Abrams*, 630 Fed.Appx. 40 (2d Cir. 2015) ............................................................... 15

*Jones v. Westchester Cnty. Dep't of Corr. Med. Dep't,* 557 F.Supp.2d 408 (S.D.N.Y. 2008) 16, 18

*Jovanovic v. City of New York*, No. 04 Civ. 8437 (PAC), 2006 WL 2411541 (S.D.N.Y. Aug. 17, 2006) .............................................................................................................................. 11, 12

*McKenna v. Wright*, 386 F.3d 432 (2d Cir. 2004) .................................................................... 15

*Murphy v. Lynn*, 53 F.3d 547 (2d Cir. 1995) ............................................................................ 12

*Newton v. City of New York*, 738 F.Supp.2d 397 (S.D.N.Y. 2010) ........................................... 13

*Poux v. Cnty. of Suffolk*, 09 CV 3081(SJF)(WDW), 2010 WL 1849279 (E.D.N.Y. May 4, 2010) .......................................................................................................................................... 16

*Roberites v. Huff*, No. 11–CV–52ISC, 2012 WL 1113479 (W.D.N.Y. Mar. 28, 2012) .............. 12

*Singleton v. City of New York*, 632 F.2d 185 (2d Cir.1980), *cert. denied,* 450 U.S. 920 (1981).. 12

*Smalls v. City of New York*, 181 F.Supp.3d 178 (E.D.N.Y. 2016) ....................................... 11, 12

*Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104 (2d Cir. 2008)..... 11

*Wray v. City of New York*, 490 F.3d 189 (2d Cir. 2009) ............................................................ 16

*Ying Li v. City of New York*, 246 F.Supp.3d 578 (E.D.N.Y. 2017) ..................................... 13, 14

*Zahrey v. Coffey*, 221 F.3d 342 (2d Cir. 2005) ........................................................................ 16


**Other Authorities**

http://www.timesunion.com/local/article/Jury-out-in-case-of-Troy-toddler-s-death-9182698.php. ............................................................................................................................................ 9

http://www.troyrecord.com/article/TR/20111012/NEWS/310129978 ........................................ 9

http://www.troyrecord.com/article/TR/20111012/NEWS/310129978. *Id.* at ¶ 77 ..................... 10

## PRELIMINARY STATEMENT

Plaintiff Adrian Thomas respectfully submits this memorandum of law in opposition to the defendants County of Rensselaer and Michael Sikirica's motion to dismiss plaintiff's claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Defendants move to dismiss plaintiff's claims against defendant Sirkirica and against defendant County of Rensselaer (hereinafter "County" or "County Defendants") for municipal liability. For the reasons that follow, defendants' motion to dismiss should be denied.[1]

## RELEVANT FACTS

In September 2008, Thomas, a 26 years old father with no criminal record, lived with his wife, Wilhemina Hicks, and their seven children. *See* ECF Doc. 31 ¶ 24-25, 27. The couple's two youngest children, Matthew and his twin brother, were four months old. *Id.* at ¶ 26. They had been born prematurely and, as such, were more vulnerable to illness than full-term babies. *Id.* at ¶ 27. On the morning of September 21, 2008, Matthew was ill. *Id.* at ¶ 29. He was running a fever and had experienced diarrhea and vomiting for a few days. *Id.* Hicks did not think Matthew's symptoms were particularly severe, but at about 8:00 a.m., Matthew became limp and unresponsive. *Id.* Hicks called an ambulance. *Id.*

Matthew was transported to Samaritan Hospital in Troy, New York. *Id.* at ¶ 30. There, he presented with a range of symptoms that strongly suggested a bacterial infection, including a low white blood cell count, irregular heartbeat, low blood pressure, severe dehydration, and respiratory failure. *Id.* The treating emergency room doctor noted the most likely differential diagnosis to be septic shock. *Id.* Blood tests to confirm sepsis were performed, but their results were not

---

[1] Without conceding the potential viability of plaintiff's failure to intervene claim, in the interest of streamlining plaintiff's claims for trial, plaintiff does not contest Point II of Defendants' Supplemental Memorandum of Law, ECF Doc. 41.

immediately available. *Id.* Meanwhile, Matthew was placed on massive doses of antibiotics. *Id.* Later that day, Matthew was transferred to the Pediatric Intensive Care Unit at Albany Medical Center, where he was treated by Dr. Walter Edge. *Id.* at ¶ 31. On information and belief, Dr. Edge had been on duty and had not slept for nearly two days. *Id.*

While Matthew was being treated at Albany Medical Center, the evidence that he was suffering from septic shock caused by a massive bacterial infection continued to build. *Id.* at ¶ 32. His white blood cell count was very low, he had decreased clotting mechanisms, he failed to maintain oxygen saturation, among other signs. *Id.* Dr. Edge nevertheless falsely concluded, based on no credible medical evidence, that Matthew had suffered a skull fracture and was the victim of a physical assault. *Id.* at ¶ 33. Dr. Edge was completely wrong and by the next day, more thorough testing had confirmed that Matthew's skull had not been fractured after all. *Id.* at ¶ 34. A complete skeletal survey found no fractures, no contusions, no abrasions, and no deformities of any kind. *Id.*

Nonetheless, working from Dr. Edge's initial false diagnosis on September 21, but otherwise having no reason to believe Mr. Thomas had any involvement in causing Matthew's injuries, TPD defendants took Mr. Thomas into police custody and set out to obtain a coerced false confession from him to justify his arrest and prosecution for a crime he did not commit. *Id.* at ¶ 35. The defendant TPD officers took Mr. Thomas to an interrogation room at the Troy Central Police Station, where they interrogated Thomas, or stood by while he was interrogated without intervening in the illegal techniques employed, for a total of about 9 1/2 hours, broken into an initial two-hour and a subsequent 7 1/2-hour session. *Id.* at ¶ 37. In between, Thomas, who had expressed suicidal thoughts during the first session, was involuntarily hospitalized for approximately 15 hours in a secure psychiatric unit. *Id.* at ¶ 38. Thomas was released from the

psychological hospital to his interrogators, defendants Mason and Fountain, who immediately escorted him back to the police station where the interrogation resumed. *Id.* at ¶ 39. Thomas slept no more than an hour and a half between the two interrogation sessions. *Id.*

During Thomas' prolonged interrogation, the TPD defendants engaged in various coercive tactics, as detailed extensively in plaintiff's complaint, to secure a false confession from plaintiff, which the TPD defendants ensured was consistent with the initial false diagnosis received from Dr. Edge. *Id.* at ¶¶ 40-48. Ultimately, after steadfastly denying injuring his son, Thomas succumbed to the illegal interrogation tactics and, consistent with the TPD defendants' directions, demonstrated on video throwing his son down on a mattress and admitted under circumstances precisely resembling those specified by Mason, that he threw Matthew down on his mattress on the Wednesday, Thursday, and Saturday preceding the child's hospitalization. *Id.* at ¶ 49. The TPD defendants knew that the only purported evidence linking Mr. Thomas to Matthew's death was the coerced and suggested false confession that they extracted from him after he had for hours denied any wrongdoing. *Id.* at ¶ 50. Based on said confession, Thomas was arrested on September 23, 2008, booked and incarcerated at the Rensselaer County Jail, and then arraigned on false criminal charges that he had murdered Matthew. *Id.* at ¶ 51.

Thereafter, on September 25, 2008, the Rensselaer County medical examiner, Dr. Michael Sikirica, met with defendant Mason, and then performed the autopsy of Matthew in the presence of defendant Mason and the Rensselaer County District Attorney, Richard R. McNally, Jr., as well as Assistant District Attorney Christa Book. *Id.* at ¶ 52. Notwithstanding the overwhelming medical evidence that Matthew died of septic shock caused by a bacterial infection, and notwithstanding that Dr. Sikirica would later admit at Mr. Thomas' trials that he was aware that Matthew had streptococcus pneumonia bacteria in his bloodstream suggesting sepsis, Dr. Sikirica

failed to document sepsis in his list of anatomic diagnoses in his autopsy report. *Id.* at ¶ 53. Instead, in the official County autopsy report authored by Dr. Sikirica, and which was conveyed to prosecutors and utilized in the prosecution of Adrian Thomas, Dr. Sikirica falsely recorded the cause of Matthew's death to be severe closed head injuries with cerebral edema due to blunt force trauma, and the manner of death to be a homicide. *Id.* at ¶ 54. Dr. Sikirica rendered this false medical opinion that Matthew died of head trauma rather than sepsis to ensure consistency with Thomas' false coerced confession, and otherwise in furtherance of a conspiracy with the TPD defendant officers to falsely accuse and maliciously prosecute Mr. Thomas for the murder of his child. *Id.* at ¶ 55.

On September 26, 2008, the day after defendant Sikirica conducted the autopsy in the presence of defendant TPD officers and Rensselaer County prosecutors, Mr. Thomas was indicted by a grand jury. *Id.* at ¶ 56. His criminal case proceeded to trial in October 2009 under Rensselaer County Case Number 08-1074. *Id.* at ¶ 57. The prosecution, led by Ms. Book, built its case around Thomas' videotaped coerced false confession and the autopsy findings of Dr. Sikirica, as evidenced by Ms. Book's opening statement to the jury. *Id.* at ¶ 58. In addition, the prosecution showed the jury the taped demonstration of Thomas throwing an object on the floor to illustrate how he supposedly threw his son onto the bed. *Id.* Dr. Sikirica also testified, and while he for the first time acknowledged that Matthew was suffering from sepsis at the time of his death, Dr. Sikirica again put forth his false diagnosis that Matthew died of head trauma. *Id.* at ¶ 59. Tragically, the jury found Thomas guilty of second degree murder. He was sentenced to 25 years to life in prison. *Id.* at ¶ 61.

Thereafter, in February 2014, the Court of Appeals reversed Thomas's conviction, finding the confession was coerced, involuntary, and therefore unconstitutional under the totality of the

circumstances because the array of "highly coercive deceptions" used by the interrogating detectives. *People v. Thomas*, 22 N.Y.3d 629, 642 (2014). *Id.* at ¶ 62. In May 2014, Thomas was retried. *Id.* at ¶ 63. At the second trial, the prosecution relied primarily on Dr. Sikirica's false findings, as set forth in the official autopsy report, that the cause of Matthew's death was a severe closed head injury with cerebral edema due to blunt force trauma, and that the manner of death was a homicide. *Id.* at ¶ 64. The defense, however, conclusively proved through the uncontroverted medical evidence and expert testimony that Matthew suffered no recent acute trauma, and rather that he died of septic shock caused by a bacterial infection, to wit: streptococcus pneumonia. CT scans of Matthew's brain proved that he did not in fact suffer subdural hematomas. The CT report itself did not mention subdural hematomas or even note the presence of blood. *Id.* at ¶ 65. The gap between the skull and brain clearly is mostly water, not blood. And dura cross-section slides confirmed the presence of small amounts of blood around Matthew's brain for weeks—a fact that was flatly inconsistent with the prosecution's theory that Thomas assaulted him on or shortly before September 21, 2008. *Id.* The second jury acquitted Thomas on June 12, 2014. *Id.* at ¶ 66.

Plaintiff further alleges, in relevant part, that all of the above occurred as a direct result of the unconstitutional policies, customs or practices of Rensselaer County, including, without limitation, the inadequate screening, hiring, retaining, training and supervising its employees, and further that defendant Rensselaer County is aware from lawsuits, notices of claims, complaints, news reports, and failed prosecutions, that its medical examiner, Dr. Sikirica, was *inter alia*, not acting independently, was overworked and not careful in his work, did not adequately investigate the prior medical history of decedents, and had on other occasions similarly offered faulty diagnoses and cause of death determinations, which ignored obvious medical evidence of natural

causes for infant and child deaths, in an effort to ultimately aid in the fabrication of evidence and malicious prosecutions of innocent individuals being charged with crimes by law enforcement agencies in Rensselaer County and by the Rensselaer County District Attorney's Office. *Id.* at ¶¶ 68, 72.

For example, defendant Rensselaer County was aware from the trial of Joseph McElheny, who was similarly arrested by TPD officers and prosecuted by the Rensselaer County District Attorney's Office, and in 2011, acquitted of murdering his four-month-old daughter, that Dr. Sikirica had similarly ignored extensive medical evidence which supported a finding that the child had died of natural causes, and provided a cause of death and medical diagnosis consistent with the urging of investigating police and prosecutors who were seeking a homicide conviction. *See e.g.* http://www.troyrecord.com/article/TR/20111012/NEWS/310129978. Despite knowing this, defendant County again relied on Dr. Sikirica's testimony in this case. *Id.* at ¶ 73. Defendant County is further aware from the acquittal of Michael Davis, who was also similarly arrested by TPD officers, prosecuted by the Rensselaer County District Attorney's Office, and in 2015, acquitted of charges including manslaughter arising from the death of his girlfriend's two-and-a-half-year-old daughter. *Id.* at ¶ 74. In Davis, Dr. Sikirica again ignored medical evidence and provided a diagnosis consistent with the urging of police and prosecutors who were seeking a manslaughter conviction against Mr. Davis. *See e.g.* http://www.timesunion.com/local/article/Jury-out-in-case-of-Troy-toddler-s-death-9182698.php. *Id.* Furthermore, testimony at the Davis trial confirmed that Dr. Sikirica was overworked, handling more cases than a medical examiner should and could at any given time, resulting in Dr. Sikirica executing his duties without the level of care and diligence required of a person with his authority

and influence over serious criminal prosecutions, including cases involving alleged homicides. *Id.* at ¶ 75.

Based on the foregoing, the County was aware that Dr. Sikirica lacked the objectivity, temperament, discretion, and disposition to be employed as County's medical examiner, and to otherwise competently provide evidence and testify against criminal defendants in homicide and other serious felony prosecutions. *Id.* at ¶ 76. The wife of Mr. McElheny aptly described this pattern and practice in a written statement released after her husband's acquittal:

> Parents are being targeted, often at the worst moments in their lives, by overzealous police and child protective investigators . . . . These investigators use the parents' grief and the memories of their children to coerce them into making statements of self-implication. Most often, the parents want answers even more than authorities do. Instead, what they get are accusations and blame. None of this would be possible without the medical establishment standing by and doing nothing. This is a discussion we all should be having as a society. . . .We need to shine a light on child abuse, but not at the expense of tearing apart innocent families, and not with a blind eye toward the injustice that results from jumping to conclusions. *See* http://www.troyrecord.com/article/TR/20111012/NEWS/31012997 8. *Id.* at ¶ 77.

Despite such notice, defendant Rensselaer County continued to allow these malicious and unsupported prosecutions to proceed, and it continued to retain Dr. Sikirica and to proffer his reports and otherwise utilize his services in furtherance of said prosecutions, and it failed to adequately train, supervise and properly discipline the Rensselaer County District Attorney and Assistants District Attorneys in that office, and Dr. Sikirica, or to take any steps whatsoever to avoid tragic miscarriages of justice such as the wrongful conviction of Mr. Thomas. *Id.* at ¶ 78.

### STANDARD OF REVIEW

In considering a Fed. R. Civ. P. 12(b)(6) motion to dismiss, a court must "accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-

moving party." *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir. 2008). To withstand the motion, the plaintiff's complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* Facial plausibility in this context does not amount to "a probability requirement" rather, it requires a showing of "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted).

## ARGUMENT

### POINT I
### PLAINTIFF'S CLAIMS AGAINST SIKIRICA FOR MALICIOUS PROSECUTION AND FABRICATION OF EVIDENCE ARE NOT TIME-BARRED

Defendants claim that plaintiff's malicious prosecution and right to fair trial claims against Dr. Sikirica are time-barred, arguing that the statute of limitations began to run as of the date he became aware of Dr. Sikirica's false autopsy report. Defendants' argument should be rejected because plaintiff's claims for right to fair trial and malicious prosecution did not accrue until he was acquitted after his second trial. *See Jovanovic v. City of New York*, No. 04 Civ. 8437 (PAC), 2006 WL 2411541, *12 (S.D.N.Y. Aug. 17, 2006). The statute of limitations period for a § 1983 claim is controlled by New York law and is the same as for a personal injury action, which is three years pursuant to New York C.P.L.R. § 214. *See Smalls v. City of New York*, 181 F.Supp.3d 178, 184 (E.D.N.Y. 2016). However, federal law governs when the limitations period begins to run. *Id.* While defendants are correct that a § 1983 claim ordinarily accrues when the plaintiff knows

or has reason to know of the injury which forms the basis of his claim, this is not the case where the claim would undermine the validity of the conviction itself. *Id.* (relying on *Heck v. Humphrey*, 512 U.S. 477, 489–90 (1994)). For "claims based in malicious prosecution, this period starts to run only when the underlying criminal action is conclusively terminated. *Murphy v. Lynn*, 53 F.3d 547, 548 (2d Cir. 1995) (citing *Singleton v. City of New York*, 632 F.2d 185, 189, 193 (2d Cir.1980), *cert. denied*, 450 U.S. 920 (1981)). Similarly, because "[a] fabrication of evidence claim, like a malicious prosecution claim, seeks to 'impugn the validity of [the] extant conviction'" it cannot be asserted until after a conviction or sentence has been invalidated. *Murphy*, 53 F.3d at 548 (quoting *Roberites v. Huff*, No. 11–CV–52ISC, 2012 WL 1113479, at *3–4 (W.D.N.Y. Mar. 28, 2012) (dismissing fabrication of evidence claim as premature where direct appeal was still pending)). *See also, Bailey v. City of New York*, 79 F.Supp.3d 424, 455 (E.D.N.Y.2015) (holding that the statute of limitations accrued on the date plaintiff's conviction was overturned because where a plaintiff's right to a fair trial claim would necessarily impugn the validity of his conviction, "the complaint must be dismissed unless [he] can demonstrate that the conviction or sentence has already been invalidated.")

Had plaintiff asserted his right to fair trial claim at any point prior to his acquittal after his second trial, at which point the indictment against him was finally dismissed with prejudice, his claim would have been subject to dismissal under *Heck* because it would necessarily impugn the validity of his conviction and would have created a risk of inconsistent verdicts. *Smalls*, 181 F.Supp.3d at 184; *Jovanovic*, 2006 WL 2411541, *12; *Bailey*, 79 F.Supp.3d at 455. Under such circumstances, plaintiff's right to fair trial claim did not accrue until he was acquitted on June 12, 2014. *See id.* Plaintiff's malicious prosecution also did not accrue until his acquittal, pursuant to clear Second Circuit precedent. *See Murphy*, 53 F.3d at 548. Therefore, because plaintiff filed his

complaint on June 12, 2017, within three years of the date of his acquittal, his malicious prosecution and right to fair claims were timely filed.

## POINT II
## DEFENDANT SIKIRICA IS NOT ENTITLED TO IMMUNITY[2]

A. Defendant Sikirica is not entitled to Absolute Immunity

"The Supreme Court has been 'quite sparing' in its recognition of absolute immunity, because '[t]he presumption is that qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their duties.'" *Newton v. City of New York*, 738 F.Supp.2d 397, 404-05 (S.D.N.Y. 2010). In determining whether a public official is entitled to absolute immunity, "the Court applies a 'functional approach' and looks to the function being performed rather than to the office or identity of the defendant." *See Ying Li v. City of New York*, 246 F.Supp.3d 578, 643-45 (E.D.N.Y. 2017). "Prosecutors are entitled to absolute immunity, for example, because their prosecutorial activities are 'intimately associated with the judicial phase of the criminal process, and thus [are] functions to which the reasons for absolute immunity apply with full force.'" *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010). Where a prosecutor is engaged in investigatory functions that do not relate to the preparation or initiation of criminal proceedings, however, he is entitled to qualified, not absolute immunity. *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993). Absolute immunity may also extend "to non-prosecutor officials [if] they are performing 'functions analogous to those of a prosecutor.'" *Cornejo*, 592 F.3d at 127.

Here, to determine whether or not Sikirica is entitled to absolute or qualified immunity, the Court must determine whether or not Sikirica's activity was investigative or prosecutorial. *See Ying Li*, 246 F.Supp.3d at 643. Drawing all inferences in plaintiff's favor, the function being

---

[2] Plaintiff does not contest that a trial witness enjoys absolute immunity for his or her testimony, and therefore does not contest this aspect of defendants' motion, which is not dispositive here.

13

performed by Sikirica was an investigative one, i.e. the autopsy was being conducted in a pre-conviction context for investigatory purposes, that is ostensibly to search for clues and corroboration, and to determine the cause of death. *See Buckley*, 509 U.S. at 273 (noting that "[t]here is a difference between the advocate's role in evaluating evidence and interviewing witnesses as he prepares for trial, on the one hand, and the detective's role in searching for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested, on the other hand.") In sum, Sikirica was engaged in a function analogous to that of an investigator, not that of a prosecutor, and therefore he is not entitled to absolute immunity. Further, it is not dispositive that Thomas had already been arrested at the time the autopsy was conducted, as the Second Circuit has recognized that an official may engage in investigative work even after probable cause has purportedly been established. *See Anilao v. Spota*, 774 F.Supp.2d 457, 477 (E.D.N.Y. 2011).

In *Ying Li*, a markedly similar case, applying these principles, the court held that "where the official is involved in a *pre*-conviction context and is alleged to have provided false statements and analyses in support of the criminal complaint," which is exactly what plaintiff alleges against Sikirica in this case, the court could not find as a matter of law that the official acted in a prosecutorial rather than investigatory role, and on this basis denied defendants' absolute immunity defense. *Ying Li*, 246 F.Supp.3d at 644 (citing *Hill v. City of New York*, 45 F.3d 653 (2d Cir. 1995) ("[W]hen it may not be gleaned from the complaint whether the conduct objected to was performed . . . in an advocacy or an investigatory role, the availability of absolute immunity from claims based on such conduct cannot be decided as a matter of law on a motion to dismiss."). Viewing all inferences in plaintiff's favor, defendant Sikirica was engaged in an investigatory function, and therefore it cannot be said as a matter of law that he is entitled to absolute immunity.

B. <u>Defendant Sikirica is not entitled to Qualified Immunity</u>

"[U]sually, the defense of qualified immunity cannot support the grant of a Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted." *Hyman v. Abrams*, 630 Fed.Appx. 40, 42 (2d Cir. 2015). However, "a district court may grant a Rule 12(b)(6) motion on the ground of qualified immunity if 'the facts supporting the defense appear on the face of the complaint." *Id. See also, McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004) ("[a]n affirmative defense may be raised by a pre-answer motion to dismiss under Rule 12(b)(6), without resort to summary judgment procedure, if the defense appears on the face of the complaint.") Furthermore, "the motion may be granted only where 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.'" *Id.*

Here, plaintiff alleges in his amended complaint that on September 25, 2008, defendant Sikirica met with defendant Mason, and then performed the autopsy in the presence of defendant Mason and the Rensselaer County District Attorney, Richard R. McNally, Jr., as well as Assistant District Attorney Christa Book. *See* ECF Doc. 31 at ¶ 52. Plaintiff further alleges that defendant Sikirica falsely recorded the cause of death to be severe closed head injuries with cerebral edema due to blunt force trauma, and the manner of death to be a homicide, and that he rendered this false medical opinion that plaintiff's son died of head trauma rather than sepsis to ensure consistency with Thomas' false coerced confession, and otherwise in furtherance of a conspiracy with the TPD defendant officers to falsely accuse and maliciously prosecute Mr. Thomas for the murder of his child. *Id.* at ¶¶ 54-55. Taking these allegations as true, and drawing all inferences in plaintiff's favor—including that Sikirica rendered a false cause of death determination in furtherance of a conspiracy with TPD defendant officers to falsely accuse and maliciously prosecute plaintiff—the defense of qualified immunity does not appear on the face of the amended complaint and therefore

defendants' motion must be denied. *See Anilao*, 774 F.Supp.2d. at 492-93 (holding that "if plaintiffs prove their allegations that defendants Spota and Lato falsified evidence during the investigation of plaintiffs and such falsification lead to the deprivation of plaintiffs' liberty in the form of an arrest, defendants would not be entitled to qualified immunity.") (citing *Zahrey v. Coffey*, 221 F.3d 342, 357 (2d Cir. 2005) (where plaintiff put forth sufficient allegations that he was deprived of liberty as a result of prosecutor's fabrication of evidence during the investigation of plaintiff, court could not grant defendant prosecutor qualified immunity as a matter of law on a motion to dismiss).

## POINT III
## PLAINTIFF'S CLAIM FOR MUNICIPAL LIABILITY IS PLAUSIBLE ON ITS FACE

Federal claims against a municipality, otherwise known as "*Monell* claims", "are not subject to a heightened pleading standard and need only comply with the notice pleading requirement of Rule 8(a)(2) of the Federal Rules of Civil Procedure, *i.e.* that it include 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Cantey v. City of New York*, 10 CV 4043 (JPO), 2012 WL 6771342, *2-3 (S.D.N.Y. Dec. 11, 2012) (citing *Poux v. Cnty. of Suffolk*, 09 CV 3081(SJF)(WDW), 2010 WL 1849279, at *11 (E.D.N.Y. May 4, 2010); *see also Jones v. Westchester Cnty. Dep't of Corr. Med. Dep't*, 557 F.Supp.2d 408, 417 (S.D.N.Y. 2008). In order "[t]o hold a city liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2009). Furthermore, the inadequacy of police training may serve as the basis for § 1983 liability "where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants" such [that] the

shortcoming [can] be properly thought of as a city 'policy or custom.'" *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 388–89 (1989). At the pleading stage, "a plaintiff need only plead that the city's failure to train caused the constitutional violation," insofar as "it unlikely that a plaintiff would have information about the city's training programs or about the cause of the misconduct at the pleading stage." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 130 n.10 (2d Cir. 2004).

Plaintiff has pled sufficient facts to support his claim that his constitutional rights were violated by the County's failure to train and supervise Dr. Sikirica. Additionally, plaintiff has clearly pled that this constitutional violation occurred as a result of the unconstitutional policies, customs or practices of the County, including, without limitation, the inadequate screening, hiring, retaining, training and supervising its employees. In particular, plaintiff alleged that defendant Rensselaer County is aware from lawsuits, notices of claims, complaints, news reports, and failed prosecutions, that its medical examiner, Dr. Sikirica, was *inter alia,* not acting independently, was overworked and not careful in his work, did not adequately investigate the prior medical history of decedents, and had on other occasions similarly offered faulty diagnoses and cause of death determinations, which ignored obvious medical evidence of natural causes for infant and child deaths, in an effort to ultimately aid in the fabrication of evidence and malicious prosecutions of innocent individuals being charged with crimes by law enforcement agencies in Rensselaer County and by the Rensselaer County District Attorney's Office. *See* ECF Doc. 31 at ¶¶ 68, 72. In support of his claims, plaintiff cites to the trials and acquittals of Joseph McElheny, who was acquitted prior to plaintiff's second trial, and of Michael Davis, both of which involved situations where Sikirica similarly ignored medical evidence which supported a finding that the child had died of natural causes, and provided a cause of death and medical diagnosis consistent with the urging of investigating police and prosecutors who were seeking criminal convictions arising from the

17

child's death. *Id.* at ¶¶ 73-75. Based on the foregoing, the County was aware that Dr. Sikirica lacked the objectivity, temperament, discretion, and disposition to be employed as County's medical examiner, and to otherwise competently provide evidence and testify against criminal defendants in homicide and other serious felony prosecutions, yet, despite such notice, defendant County continued to allow these malicious and unsupported prosecutions to proceed, and it continued to retain Dr. Sikirica and to proffer his reports and otherwise utilize his services in furtherance of said prosecutions, and it failed to adequately train, supervise and properly discipline the Rensselaer County District Attorney and Assistants District Attorneys in that office, and Dr. Sikirica, or to take any steps whatsoever to avoid tragic miscarriages of justice such as the wrongful conviction of Mr. Thomas. *Id.* at ¶¶ 76-78.

Based on the foregoing, and drawing all inferences in plaintiff's favor, plaintiff has stated a plausible *Monell* claim and therefore dismissal of his claim at this stage is premature. This is particularly so, considering that plaintiff has not yet had an opportunity to complete discovery, which is primarily in the sole possession of the County, which would be necessary to further flesh out his claim. *See Cantey,* 2012 WL 6771342 at *5. *Jones,* 557 F. Supp.2d at 417; *Gordon v. City of New York,* 14 CV 6115 (JPO), 2015 WL 3473500, at *16 (S.D.N.Y. June 2, 2015).

# CONCLUSION

For the reasons set forth above, defendants motion to dismiss should be denied, together with such other relief to plaintiff that the Court deems just and proper.

Dated: New York, New York
December 4, 2017

BRETT H. KLEIN, ESQ., PLLC
Attorneys for Plaintiff
305 Broadway, Suite 600
New York, New York 10007
(212) 335-0132

By:   s/ Brett Klein
    BRETT H. KLEIN (BK4744)