UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ADRIAN THOMAS,

                              Plaintiff,

v.                                                              1:17-CV-0626
                                                                (GTS/DJS)
CITY OF TROY; ADAM R. MASON, Police
Officer/Detective, Troy Police Department in
His Individual Capacity; RONALD FOUNTAIN,
Police Officer/Detective, Troy Police Department
in His Individual Capacity; TIM COLANERI,
Police Officer/Detective, Troy Police Department
in His Individual Capacity; RENSSELAER
COUNTY; and MICHAEL SIKIRICA, Medical
Doctor for Rensselaer County, in His Individual
Capacity,

                              Defendants.
_____

APPEARANCES:                                    OF COUNSEL:

BRETT H. KLEIN, ESQ., PLLC                      BRETT H. KLEIN, ESQ.
  Counsel for Plaintiff
305 Broadway, Suite 600
New York, New York 10007

PATTISON, SAMPSON, GINSBERG & GRIFFIN, P.C.     DONALD J. SHANLEY, ESQ.
  Counsel for City of Troy Defendants           MICHAEL E. GINSBERG, ESQ.
P.O. Box 208
22 First Street
Troy, New York 12181

BAILEY, JOHNSON, DeLEONARDIS & PECK P.C.        CRYSTAL R. PECK, ESQ.
  Counsel for County of Rensselaer Defendants   JOHN W. BAILEY, ESQ.
5 Pine West Plaza, Suite 507
Washington Avenue Extension
Albany, New York 12205

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

Currently pending before the Court, in this civil rights action filed by Adrian Thomas ("Plaintiff") against the City of Troy, Adam R. Mason, Ronald Fountain, and Tim Colaneri (collectively "City Defendants"), and the County of Rensselaer and Michael Sikirica ("Dr. Sikirica") (collectively "County Defendants"), are the following three motions pursuant to Fed. R. Civ. P. 12(b)(6): County Defendants' motion to dismiss Plaintiff's Amended Complaint; County Defendants' motion to dismiss City Defendants' cross-claims; and City Defendants' motion to dismiss Plaintiff's Amended Complaint. (Dkt. Nos. 12, 29, 40, 41.)  For the reasons set forth below, County Defendants' motion to dismiss Plaintiff's Amended Complaint is granted in part and denied in part, County Defendants' motion to dismiss City Defendants' cross-claims is granted, and City Defendants' motion to dismiss Plaintiff's Amended Complaint is granted in part and denied in part.

## I.    RELEVANT BACKGROUND

### A.    Plaintiff's Amended Complaint

Generally, liberally construed, Plaintiff's Amended Complaint alleges that, on September 21, 2008, Plaintiff's four-month-old son, Matthew, became ill and was transported by ambulance to Samaritan Hospital in Troy, New York.  (*See generally* Dkt. No. 31.)  There, the treating emergency room doctor noted the most likely differential diagnosis to be septic shock.  (*Id.*) Later on September 21, 2008, Matthew was transferred to the Pediatric Intensive Care Unit at Albany Medical Center, where he was treated by Dr. Walter Edge.  (*Id.*)  Dr. Edge incorrectly concluded that Matthew had suffered a skull fracture and was the victim of a physical assault. (*Id.*)

Based on Dr. Edge's diagnosis, City Defendants took Plaintiff into custody and interrogated him for a total of about nine-and-one-half hours broken into an initial two-hour session and a subsequent seven-and-one-half-hour session. (*Id.*) In between those two sessions, Plaintiff expressed suicidal thoughts and was involuntarily hospitalized for approximately fifteen hours in a secure psychiatric unit. (*Id.*) Plaintiff was released from the psychiatric unit to Mason and Fountain, who are City of Troy police officers, and the interrogation continued. (*Id.*)

Throughout the interrogation, City of Troy police officers Mason, Fountain, and Colaneri used numerous tactics to elicit a confession from Plaintiff. (*Id.*) Ultimately, they succeeded in their efforts and Plaintiff confessed that on three occasions during the week preceding Matthew's death, he "slammed" Matthew down on to a mattress. (*Id.*) In addition, a videotape of Plaintiff's interrogation showed Plaintiff demonstrating the "slamming" motion, which consisted of him holding a clipboard to symbolize Matthew in his hands, raising his hands over his head, quickly lowering them with great force toward the ground, and throwing the clipboard. (*Id.*)

Based on this confession, on September 23, 2008, Plaintiff was charged with murdering Matthew. On September 25, 2008, Rensselaer County medical examiner, Dr. Sikirica, met with Mason, then performed an autopsy of Matthew in the presence of Mason and Rensselaer County District Attorney Richard R. McNally, Jr., and Assistant District Attorney Christa Book. (*Id.*) Notwithstanding the medical evidence that Matthew died of septic shock caused by a bacterial infection and that Matthew had streptococcus pneumonia bacteria in his bloodstream, Dr. Sikirica failed to document sepsis in his autopsy report. (*Id.*) Instead, in furtherance of a conspiracy with City Defendants, Dr. Sikirica falsely recorded the cause of Matthew's death to be severe closed head injuries with cerebral edema due to blunt force trauma, and the manner of

death to be homicide. (*Id.*) Dr. Sikirica then conveyed his autopsy report to prosecutors for use in the prosecution of Plaintiff. (*Id.*)

The next day, on September 26, 2008, Plaintiff was indicted by a grand jury for the murder of Matthew. (*Id.*) Plaintiff's criminal case proceeded to trial in October 2009. (*Id.*) The prosecution presented Plaintiff's confession, the videotaped demonstration of how he threw Matthew onto the mattress, Dr. Sikirica's autopsy report, and testimony of Dr. Sikirica who put forth his diagnosis that Matthew died of head trauma. (*Id.*)

The jury found Plaintiff guilty of second degree murder. (*Id.*) Plaintiff was sentenced to twenty-five years to life in prison. (*Id.*) In February 2014, the New York Court of Appeals found that Plaintiff's confession was not voluntary and thus, reversed his conviction and remanded the case for a new trial. (*Id.*)

In May 2014, Plaintiff was re-tried on the murder of Matthew. (*Id.*) During the re-trial, the prosecution relied on Dr. Sikirica's findings, as outlined in the autopsy report, that Matthew's death was caused by a severe closed head injury with cerebral edema due to blunt force trauma, and the manner of death was a homicide. (*Id.*) However, the defense proved that Matthew suffered no recent acute trauma and instead died of septic shock caused by a bacterial infection. (*Id.*) The jury in the re-trial acquitted Plaintiff on June 12, 2014. (*Id.*)

The City of Troy and County of Rensselaer have unconstitutional policies, customs, or practices that include inadequate screening, hiring, retaining, training, and supervising of their employees. (*Id.*)

The City of Troy is aware from sources including lawsuits, notices of claim, complaints, news reports, internal investigations, and failed prosecutions that many Troy police officers, including Mason, Fountain, and Colaneri, engage in misconduct and unlawful interrogation

techniques pursuant to Troy Police Department policy, custom, or practice. (*Id.*) Despite such notice, the City of Troy failed to take corrective action and that failure caused the officers here to violate Plaintiff's civil rights. (*Id.*)

The County of Rensselaer was also aware from lawsuits, notices of claims, complaints, news reports, and failed prosecutions that Dr. Sikirica was not acting independently, did not adequately investigate prior medical history of decedents, and had similarly ignored obvious medical evidence, which supported the finding that a child had died of natural causes, and provided a cause of death and medical diagnosis consistent with the urging of police officers who were seeking a homicide conviction. (*Id.*)

In his Amended Complaint, Plaintiff included the citations to web addresses of "URLs" of two news articles. (*Id.*) The first news article discussed Joseph McElheny, who was charged in the May 2010 death of his four-month-old daughter. (*Id.*) The second news article discussed Michael Davis, who was charged in the February 2015 death of his two-and-one-half-year-old daughter. (*Id.*)

Generally, based on these factual allegations, the Amended Complaint asserts the following six claims: (1) a claim of malicious prosecution pursuant to 42 U.S.C. § 1983 against Mason, Fountain, Colaneri, and Dr. Sikirica; (2) a claim of violation of Plaintiff's right to a fair trial pursuant to 42 U.S.C. § 1983 against Mason, Fountain, Colaneri, and Dr. Sikirica; (3) a claim of failure to intervene pursuant to 42 U.S.C. § 1983 against Mason, Fountain, Colaneri, and Dr. Sikirica; (4) a claim of conspiracy pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1985 against Mason, Fountain, Colaneri, and Dr. Sikirica; (5) a claim of municipal liability pursuant to 42 U.S.C. § 1983 against the City of Troy; and (6) a claim of municipal liability pursuant to 42 U.S.C. § 1983 against the County of Rensselaer. (*Id.*)

**B.    Parties' Briefing on County Defendants' Motion to Dismiss the Amended Complaint**

Generally, in support of their motion to dismiss Plaintiff's Amended Complaint, County Defendants argue as follows: (1) Plaintiff's causes of action are time-barred; (2) Plaintiff has failed to state a cause of action against Dr. Sikirica for failure to intervene; (3) based on Plaintiff's factual allegations, Dr. Sikirica is protected from liability as a matter of law by the doctrine of absolute immunity or qualified immunity; and (4) Plaintiff has not sufficiently alleged facts giving rise to a claim of municipal liability against the County of Rensselaer. (*See generally* Dkt. No. 41, Attach. 1 [Cnty. Defs.' Supp. Mem. of Law].)

Generally, in opposition to County Defendants' motion to dismiss, City Defendants argue as follows: (1) dismissal is premature; and (2) City Defendants filed a cross-claim against County Defendants seeking indemnification/contribution from County Defendants as to any damages awarded to Plaintiff against City Defendants. (*See generally* Dkt. No. 27 [City Defs.' Aff. in Opp'n].)

Generally in opposition to County Defendants' motion, Plaintiff argues as follows: (1) Plaintiff's claims against Dr. Sikirica for malicious prosecution and fabrication of evidence are not time-barred because the statute of limitations for these claims did not accrue until Plaintiff was acquitted after his second trial; (2) Dr. Sikirica is not entitled to absolute immunity because the functions performed by him were investigative, and he is not entitled to qualified immunity at this stage of the litigation because the Amended Complaint adequately pleads facts that, if true, would not entitle him to qualified immunity; and (3) Plaintiff's claim for municipal liability is plausible on its face because it alleges facts plausibly suggesting that his constitutional rights

6

were violated by the County's failure to train and supervise Dr. Sikirica.  (*See generally* Dkt. No. 48 [Pl.'s Opp'n Mem. of Law].)

Generally in their reply, County Defendants argue as follows: (1) Plaintiff's causes of action are time-barred because they began to accrue in February 2014, when his conviction was reversed; (2) Plaintiff failed to state a claim against Dr. Sikirica for failure to intervene because the Amended Complaint did not allege facts plausibly suggesting that Dr. Sikirica had an affirmative duty to intervene or that he knew that Plaintiff's confession was coerced, and because Plaintiff did not oppose this portion of County Defendants' motion; (3) Dr. Sikirica should be afforded absolute immunity because his judgment as medical examiner is functionally comparable to that of judges; (4) Plaintiff's opposition fails to establish that Dr. Sikirica was a "complaining witness" exposing him to liability for malicious prosecution; and (5) Plaintiff has not alleged facts plausibly suggesting a theory of municipal liability regarding the County of Rensselaer because Plaintiff points to only two other unsubstantiated allegations of an incorrect cause-of-death determination by Dr. Sikirica.  (*See generally* Dkt. No. 54 [Cnty. Defs.' Reply Mem. of Law].)

## C.    Parties' Briefing on County Defendants' Motion to Dismiss City Defendants' Cross-Claims

Generally, in support of their motion to dismiss City Defendants' cross-claims, County Defendants argue that City Defendants cannot seek indemnification and contribution on a claim brought pursuant to 42 U.S.C. § 1983.  (*See generally* Dkt. No. 29, Attach. 1 [Cnty. Defs.' Mem. of Law].)

Generally, in opposition to County Defendants' motion, City Defendants argue that, while the Second Circuit has not yet ruled on the issue, the Third Circuit has done so and has

held that, contribution does apply under the circumstances.  (*See generally* Dkt. No. 33, Attach. 3 [City Defs.' Opp'n Mem. of Law].)

Generally, in their reply, County Defendants argue that, even under the authorities cited by Plaintiff City Defendants' cannot seek indemnification and contribution on a claim brought pursuant to 42 U.S.C. § 1983.  (*See generally* Dkt. No. 42 [Cnty. Defs.' Reply Mem. of Law].)

**D.    Parties' Briefing on City Defendants' Motion to Dismiss Plaintiff's Amended Complaint**

Generally, in support of their motion to dismiss Plaintiff's Amended Complaint, City Defendants argue as follows: (1) Plaintiff's claim for malicious prosecution is time-barred; (2) in any event, probable cause existed for the prosecution of Plaintiff; (3) Plaintiff's claim for violation of his right to a fair trial is time-barred; (4) Plaintiff's claim that City Defendants failed to intervene on his behalf is time-barred; (5) Plaintiff's conspiracy claim is time-barred; (6) Plaintiff's municipal claim is also time-barred; (7) Plaintiff failed to allege facts plausibly suggesting a theory of municipal liability; and (8) based on Plaintiff's allegations, the police officers (Mason, Fountain, and Colaneri) are protected from liability as a matter of law by the doctrine of qualified immunity.  (*See generally* Dkt. No. 40, Attach. 2 [City Defs.' Mem. of Law].)

Generally, in opposition to City Defendants' motion, Plaintiff argues as follows: (1) Plaintiff's claim for malicious prosecution is not time-barred because it did not accrue until he was acquitted after his second trial on June 12, 2014; (2) Plaintiff has rebutted the presumption of probable cause created by his indictment because he has alleged that City Defendants coerced Plaintiff's confession and conspired with Dr. Sikirica to issue a false autopsy report, which resulted in the indictment; (3) Plaintiff's fair trial claim is not time-barred because it did not

accrue until he was acquitted after his second trial on June 12, 2014; (4) Plaintiff's failure-to-intervene claim is not time-barred because City Defendants still had a duty to intervene up to and until Plaintiff was acquitted after his second trial; (5) Plaintiff's conspiracy claim is not time barred because it flows from the use of fabrication of medical evidence at trial in furtherance of Defendants' efforts to undermine Plaintiff's rights and thus accrued after Plaintiff was acquitted; (6) Plaintiff's municipal liability claim is not time-barred because it relates to the malicious prosecution and fair trial claims, which were timely filed; (7) Plaintiff's claim for municipal liability is plausible on its face because it sufficiently pled that the constitutional violations were a result of the unconstitutional policies, customs, or practices of City Defendants; and (8) taking the allegations in the Amended Complaint as true, City Defendants are not entitled to qualified immunity. (*See generally* Dkt. No. 47 [Pl.'s Opp'n Mem. of Law].)

Generally, in their reply City Defendants argue as follows: (1) Plaintiff's claim for malicious prosecution is time-barred because once the Court of Appeals deemed Plaintiff's confession coerced, the issue had been decided in his favor; (2) Plaintiff's claim for violation of his right to a fair trial is also time-barred because it began to accrue when his conviction was overturned on February 20, 2014; (3) Plaintiff's claim for failure to intervene is time-barred because it is based on conduct that occurred in 2008 and City Defendants were not involved in the prosecution; (4) Plaintiff's conspiracy claim ought to be dismissed because there is no allegation that the conspiracy included a private party and the conspiracy claim is time-barred; (5) Plaintiff's municipal liability claim also fails because Plaintiff failed to allege facts plausibly suggesting such a claim and failed to cite to any other similar instance in which Troy Police Department officers violated the rights of an individual; (6) Plaintiff's municipal liability claim is time-barred because it accrued at the latest when Plaintiff's criminal conviction was remanded;

(7) probable cause existed to prosecute Plaintiff even without the use of the confession that was later deemed coerced; and (8) based on Plaintiff's allegations, the police officers (Mason, Fountain, and Colaneri) are protected from liability as a matter of law by the doctrine of qualified immunity. (*See generally* Dkt. No. 59 [City Defs.' Reply Mem. of Law].)

## II.    GOVERNING LEGAL STANDARD

It has long been understood that a dismissal for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), can be based on one or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim. *Jackson v. Onondaga Cnty.*, 549 F. Supp.2d 204, 211, nn. 15-16 (N.D.N.Y. 2008) (McAvoy, J., adopting Report-Recommendation on *de novo* review).

Because such dismissals are often based on the first ground, a few words regarding that ground are appropriate. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) [emphasis added]. In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal." *Jackson*, 549 F. Supp.2d at 212, n.20 (citing Supreme Court case). On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of

10

what the plaintiff's claim is and the grounds upon which it rests." *Jackson*, 549 F. Supp.2d at

212, n.17 (citing Supreme Court cases) (emphasis added).[1]

The Supreme Court has explained that such *fair notice* has the important purpose of

"enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision

on the merits" by the court. *Jackson*, 549 F. Supp.2d at 212, n.18 (citing Supreme Court cases);

*Rusyniak v. Gensini,* 629 F. Supp.2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing

Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal"

notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d

ed. 2003). For example, numerous Supreme Court and Second Circuit decisions exist holding

that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak,* 629 F.

Supp.2d at 213, n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*,

129 S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly*, the Supreme Court reversed an

appellate decision holding that a complaint had stated an actionable antitrust claim under 15

U.S.C. § 1. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007). In doing so, the Court

"retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957),

that "a complaint should not be dismissed for failure to state a claim unless it appears beyond

doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him

to relief." *Twombly*, 127 S. Ct. at 1968-69. Rather than turn on the *conceivability* of an

---

[1]     *Accord, Flores v. Graphtex*, 189 F.R.D. 54, 54 (N.D.N.Y. 1999) (Munson, J.); *Hudson v. Artuz*, 95-CV-4768, 1998 WL 832708, at *1 (S.D.N.Y. Nov. 30, 1998); *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y.1995) (McAvoy, C.J.).

actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim.  *Id*. at 1965-74.  The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]."  *Id*. at 1965.  More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true.  *Id*.

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).  "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . .  [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief."  *Iqbal*, 129 S.Ct. at 1950 [internal quotation marks and citations omitted].  However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id*., it "does not impose a probability requirement."  *Twombly*, 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice."  *Iqbal*, 129 S. Ct. at 1949.  Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice.  *Iqbal*, 129 S.Ct. at 1949 (internal citations and alterations omitted).  Rule 8

"demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*
(citations omitted).

　　Finally, a few words are appropriate regarding what documents are considered when a
dismissal for failure to state a claim is contemplated.  Generally, when contemplating a dismissal
pursuant to Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 12(c), the following matters outside the
four corners of the complaint may be considered without triggering the standard governing a
motion for summary judgment: (1) documents attached as an exhibit to the complaint or answer,
(2) documents incorporated by reference in the complaint (and provided by the parties), (3)
documents that, although not incorporated by reference, are "integral" to the complaint, or (4)
any matter of which the court can take judicial notice for the factual background of the case.[2]

---

[2]　　*See* Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a
pleading is a part thereof for all purposes."); *L-7 Designs, Inc. v. Old Navy, LLC*, No. 10-573,
2011 WL 2135734, at *1 (2d Cir. June 1, 2011) (explaining that conversion from a motion to
dismiss for failure to state a claim to a motion for summary judgment is not necessary under Fed.
R. Civ. P. 12[d] if the "matters outside the pleadings" in consist of [1] documents attached to the
complaint or answer, [2] documents incorporated by reference in the complaint (and provided by
the parties), [3] documents that, although not incorporated by reference, are "integral" to the
complaint, or [4] any matter of which the court can take judicial notice for the factual
background of the case); *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010)
(explaining that a district court considering a dismissal pursuant to Fed. R. Civ. 12(b)(6) "may
consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and
documents incorporated by reference in the complaint. . . .  Where a document is not
incorporated by reference, the court may nerveless consider it where the complaint relies heavily
upon its terms and effect, thereby rendering the document 'integral' to the complaint. . . .
However, even if a document is 'integral' to the complaint, it must be clear on the record that no
dispute exists regarding the authenticity or accuracy of the document.  It must also be clear that
there exist no material disputed issues of fact regarding the relevance of the document.")
[internal quotation marks and citations omitted]; *Chambers v. Time Warner, Inc.*, 282 F.3d 147,
152 (2d Cir. 2009) ("The complaint is deemed to include any written instrument attached to it as
an exhibit or any statements or documents incorporated in it by reference.") (internal quotation
marks and citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72
(2d Cir.1995) (per curiam) ("[W]hen a plaintiff chooses not to attach to the complaint or

**III.    ANALYSIS**

**A.    Plaintiff's Claims as to County Defendants**

**1.    Malicious Prosecution**

To state a claim for malicious prosecution pursuant to 42 U.S.C. § 1983, a plaintiff must allege facts plausibly suggesting the following four elements: (1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as motivation for defendant's actions.  *Ying Li v. City of New York*, 246 F. Supp. 3d 578, 604 (E.D.N.Y. 2017) (citing *Manganiello v. City of New York*, 612 F.3d 149, 160-61 [2d Cir. 2010]).  In addition, a plaintiff must allege a violation of rights pursuant to the Fourth Amendment that resulted in "a sufficient post-arraignment deprivation[] of liberty."  *Ying Li*, 246 F. Supp. 3d at 604-05 (citing *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 117 [2d Cir. 1995]).

**a.    Initiation of a Criminal Proceeding**

"To initiate or continue a criminal proceeding, 'a defendant must do more than report the crime or give testimony.  He must play an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act.'" *Ying Li*, 246 F. Supp. 3d at 605 (quoting *Manganiello*, 612 F.3d at 163).  A defendant could have initiated a prosecution "by creating material, false information and forwarding that information to a prosecutor or by

---

incorporate by reference a [document] upon which it solely relies and which is integral to the complaint," the court may nevertheless take the document into consideration in deciding [a] defendant's motion to dismiss, without converting the proceeding to one for summary judgment.") (internal quotation marks and citation omitted).

withholding material information from a prosecutor." *Id.* at 605 (quoting *Costello v. Milano*, 20 F. Supp. 3d 406, 415 [S.D.N.Y. 2014]).

Here, Plaintiff alleges that Dr. Sikirica created a false autopsy report, improperly documented that Matthew's cause of death as a homicide, and provided that report to the prosecutor.  (Dkt. 31, ¶¶ 52-58.)  Therefore, Plaintiff has sufficiently alleged that Dr. Sikirica initiated or continued the criminal proceeding.

b.      **Termination in Plaintiff's Favor**

With regard to the second element, "it must be alleged that the prosecution is at an end, either by alleging that defendant was acquitted of the charge, or by alleging facts showing the legal termination of the prosecution complained of, in favor of defendant, prior to the commencement of the action." *Carpenter v. Nutter*, 127 Cal. 61, 63 (1899); *see also Wallace*, 549 U.S. at 392.

"Proceedings are 'terminated in favor of the accused' only when their final disposition is such as to indicate the accused is not guilty." *DiBlasio v. City of New York*, 102 F.3d 654, 658 (2d Cir. 1996); *see also Spak v. Phillips,* 857 F.3d 458, 462 (2d Cir. 2017) ("A 'favorable termination' does not occur until the prosecution against the plaintiff has 'conclusively' ended."); *McDonough v. Smith*, 15-CV-1505, 2016 WL 5717263, at *10 (N.D.N.Y. Sept. 30, 2016) (D'Agostino, J.).  A reversal of a criminal conviction and remand for a new trial does not constitute such a termination.  *DiBlasio*, 102 F.3d at 658 (citing *Russell v. Smith*, 68 F.3d 33, 36-37 [2d Cir.1995]); *accord Poventud v. City of New York*, 750 F.3d 121, 130-31 (2d Cir. 2014) ("[U]nder the common law any final termination of a criminal proceeding in favor of the accused, such that the proceeding cannot be brought again, qualifies as a favorable termination

for purposes of a malicious prosecution action.") [quoting *Smith-Hunter v. Harvey*, 95 N.Y.2d 191, 195 [2000]]).

Here, Plaintiff could not have brought his malicious prosecution claim prior to his acquittal. As a result, the statute of limitations for malicious prosecution began to accrue on June 12, 2014, when Plaintiff was acquitted. (Dkt. No. 31, ¶ 66.) Therefore, based on the three-year statute of limitations, Plaintiff's malicious prosecution claim was timely.

### 2.    Violation of the Right to a Fair Trial

In support of his claim that Defendants violated his right to a fair trial, Plaintiff alleges that Defendants fabricated evidence and provided that fabricated evidence to prosecutors. (*See generally* Dkt. No. 31.) Fabrication of evidence constitutes a violation of the right to a fair trial. *Zahrey v. Coffey*, 221 F.3d 342, 355 (2d Cir. 2000).

In actions alleging the violation of the right to a fair trial, district courts in this Circuit are split on when the statute of limitations begins to run. *Compare Bailey v. City of New York*, 79 F. Supp. 3d 424, 455 (E.D.N.Y. 2015) (holding that the statute of limitations accrued on the date that the appellate court overturned the plaintiff's conviction) *and Shabazz v. Kailer,* 201 F. Supp. 3d 386, 395-96 (S.D.N.Y. 2016) (holding that a claim related to fabrication of evidence does not accrue until the invalidation of the conviction); *with McDonough*, 2016 WL 5717263, at *10-11 ("[A] fair trial claim premised on fabrication of evidence accrues when the plaintiff learns or should have learned that the evidence was fabricated and such conduct causes the claimant some injury") *and Ying Li*, 246 F. Supp. 3d 578 ("[F]abrication of evidence claims accrue when the plaintiff learns that evidence was fabricated and an injury was caused by the fabrication.").

Plaintiff alleged in the Amended Complaint that, during his first trial he testified,

> telling the jurors that the admission of guilt he made during the
> interrogation were all lies.  He denied hitting his son's head with his head,
> hitting his son's head against the rail of the crib, and throwing his son on
> the bed three times.  He testified that during his interrogation, he
> eventually adopted the false story that the detectives had repeatedly and
> relentlessly fed to him over so many hours because the detectives
> repeatedly promised him that he would be released if he did, and he
> desperately wanted to get out of the interrogation so that he could go to the
> hospital and see his son and wife. (Dkt. No. 31, ¶ 60.)  Thus, it is clear that
> Plaintiff was aware that the autopsy report was incorrect in October 2009,
> during his first trial.  (*Id.*, ¶ 57.)

(Dkt. No. 31, ¶ 60.)  Thus, it is clear that Plaintiff was aware that the autopsy report was

incorrect in October 2009, during his first trial.  (*Id.*, ¶ 57.)

However, viewing the allegations in the light most favorable to Plaintiff, the Court finds

that the latest date that the statute of limitations would have begun to run was when Plaintiff's

criminal conviction was overturned on February 20, 2014.  *Bailey*, 79 F. Supp. 3d at 455;

*Shabazz,* 201 F. Supp. 3d at 395-96; *People v. Thomas*, 22 N.Y.3d 629 (N.Y. 2014).  Based on

the accrual date of February 20, 2014, Plaintiff's claim for violation of his right to a fair trial was

not timely.

Therefore, County Defendants' motion to dismiss Plaintiff's claim for violation of his

right to a fair trial is granted.

### 3.      Failure to Intervene

"It is widely recognized that law enforcement officials have an affirmative duty to

intervene to protect the constitutional rights of citizens from infringement by other law

enforcement officers in their presence."  *Terebesi v. Torreso*, 764 F.3d 217, 243 (2d Cir. 2014)

(quoting *Anderson v. Branen*, 17 F.3d 552, 557 [2d Cir. 1994]).  "An officer who fails to

intercede is liable for the preventable harm caused by the actions of the other officers where that

officer observes or has reason to know: (1) that excessive force is being used; (2) that a citizen

has been unjustifiably arrested; or (3) that any constitutional violation has been committed by a

law enforcement official." *Anderson*, 17 F.3d at 557.

To establish such a claim of failure to intervene, a plaintiff must prove the following four

elements: (1) that a constitutional violation was being committed against the plaintiff; (2) that the

officer knew, or deliberately ignored, the fact that the constitutional violation was going to be, or

was being, committed; (3) that the defendant had a reasonable opportunity to intervene and

prevent the harm; and (4) that the defendant did not take reasonable steps to intervene. *Curley v.*

*Vil. of Suffern*, 268 F.3d 65, 72 (2d Cir. 2001); *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir.

1994); *O'Neill v. Krzeminski*, 839 F.2d 9, 11-12 (2d Cir. 1988); *Henry v. Dinelle*, 10-CV-0456,

2011 WL 5975027, at *4 (N.D.N.Y. Nov. 29, 2011) (Suddaby, J.).  With regard to the third and

fourth elements, when considering the reasonableness of any opportunity to intervene, one must

consider both (a) the duration of the constitutional violation, and (b) the defendant's presense

and proximity during the use of the constitutional violation.

Plaintiff has failed to respond to County Defendants' motion to dismiss this claim.  (*See*

*generally* Dkt. No. 48.)  In this District, when a non-movant fails to oppose a legal argument

asserted by a movant, the movant's burden with regard to that argument is lightened, such that,

in order to succeed on that argument, the movant need only show that the argument possesses

facial merit, which has appropriately been characterized as a "modest" burden.  *See* N.D.N.Y.

L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determined that the

moving party has met to demonstrate entitlement to the relief requested therein . . . .");  *Rusyniak*

*v. Gensini*, 07-CV-0279, 2009 WL 3672105, at *1, n.1 (N.D.N.Y. Oct. 30, 2009) (Suddaby, J.)

(collecting cases); *Este-Green v. Astrue*, 09-CV-0722, 2009 WL 2473509, at *2 & nn.2, 3

(N.D.N.Y. Aug. 7, 2009) (Suddaby, J.) (collecting cases).[3]  As a result, County Defendants'

burden on this argument has been lightened such that, to succeed on this argument, they need

show only that the argument possesses facial merit, which they have done.

Even when construed with the utmost of special liberality, Plaintiff's Amended

Complaint does not allege facts plausibly suggesting that Dr. Sikirica is a law enforcement

officer.  (*See generally* Dkt. No. 31.)  In fact, generally, the duties of a medical examiner are

independent of those of a police officer.  *New York v. Washington*, 86 N.Y.2d 189, 192 (N.Y.

1995).  For these reasons, the Court finds that, Plaintiff has failed to state a cause of action for

failure to intervene as to Dr. Sikirica.  *See White v. Clark,* 12-CV-0986, 2012 WL 5877160, at *6

(N.D.N.Y. Nov. 20, 2012) (Mordue, J.) ("[D]efendants Smith and Rushford are identified as

nurses, and there is nothing to suggest that they have the authority to intervene while correctional

officers are using force on an inmate."); *Lewis v. Johnson*, 08-CV-04822010 WL 3785771, at *8

(N.D.N.Y. Aug. 5, 2010) (Baxter, M.J.) ("In any event, [Nurse Davenport] lacked the authority

to intervene while correction officers were using force on an inmate, even if she were present.");

*Rendely v. Town of Huntington*, 03-CV-3805, 2006 WL 5217083, at *6 (E.D.N.Y. Aug. 30,

---

[3]　　　Alternatively, the Court can, and does, deem the challenged claim abandoned (regardless of the facial merit of the unresponded-to argument).  *See Jackson v. Fed. Exp.*, 776 F.3d 189, 197-98 (2d Cir. 2014) ("Where a partial response to a motion is made-i.e. referencing some claims or defenses but not others-a distinction between *pro se* and counseled responses is appropriate.  In the case of a *pro se*, the district court should examine every claim or defense with a view to determining whether summary judgment is legally and factually appropriate.  In contrast, in the case of a counseled party, a court may, when appropriate, infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned.  In all cases in which summary judgment is granted, the district court must provide an explanation sufficient to allow appellate review.  This explanation should, where appropriate, include a finding of abandonment of undefended claims or defenses.").

2006) ("Because Ryan and Rinker were civilian employees of the Town of Huntington, and thus

not law enforcement officials, they had no authority of duty to intervene to prevent the Suffolk

County police from taking plaintiff into custody."); *see also Phoenix v. Reddish*, 175 F. Supp. 2d

215, 220 (D. Conn. 2001) (citing *Musso v. Hourigan*, 836 F.2d 736, 743 [2d Cir. 1988] ["[T]here

is no Supreme Court or Second Circuit authority that imposes an affirmative duty on a non-

police state actor . . . to intervene to prevent a police officer from conducting an unlawful search

and seizure."]).

### 4.    Conspiracy

Plaintiff's conspiracy claim is based on an alleged agreement between Mason, Fountain,

Colaneri, and Dr. Sikirica to engage in unlawful conduct that led to Plaintiff's claims of

malicious prosecution and violation of the right a fair trial.  (Dkt. No. 31, ¶ 150.)

"With claims alleging civil conspiracies, including conspiracies to violate an individual's

civil rights, the cause of action accrues and the statute of limitations begins to run from the time

of commission of the overt act alleged to have caused damages."  *McDonough*, 2016 WL

5717263, at *12 (citing *Harrison v. New York*, 95 F. Supp. 3d 293, 327 [E.D.N.Y. 2015]).

Accordingly, to the extent Plaintiff's conspiracy claim contemplates an agreement related

to malicious prosecution viewing the Amended Complaint in the light most favorable to Plaintiff,

Plaintiff could not have known of the alleged conspiracy before the underlying claim of

malicious prosecution came into existence on June 12, 2014.  (*See supra* Point III.A.1. of this

Decision and Order.)

To the extent Plaintiff's conspiracy claim contemplates an agreement related to violation

of his right to a fair trial, viewing the Amended Complaint in the light most favorable to

Plaintiff, Plaintiff should have known of the alleged conspiracy when the underlying claim of

violation of the right to a fair trial came into existence on or before February 20, 2014.  (*See*

*supra* Point III.A.2. of this Decision and Order.)

Therefore, County Defendants' motion to dismiss Plaintiff's conspiracy cause of action is

denied to the extent Plaintiff's conspiracy claim relates to a conspiracy to maliciously prosecute

him but granted to the extent Plaintiff's conspiracy claim relates to a conspiracy to violate his

right to a fair trial.

### 5.   *Monell* Claim

A municipality may be liable under 42 U.S.C. § 1983 if a municipal "policy or custom"

causes "deprivation of rights protected by the Constitution."  *Monell v. Dep't of Soc. Servs. of*

*N.Y.*, 436 U.S. 658, 690-91 (1978); *see also Jones v. Town of E. Haven*, 691 F.3d 72, 80 (2d Cir.

2012).  For a *Monell* claim to survive a motion to dismiss, a plaintiff must allege "sufficient

factual detail" and not mere "boilerplate allegations" that the violation of the plaintiff's

constitutional rights resulted from the municipality's custom or official policy.  *Plair v. City of*

*New York*, 789 F. Supp. 2d 459, 469 (S.D.N.Y. 2011).  "A policy or custom may be established

by any of the following: (1) a formal policy officially endorsed by the municipality; (2) actions

or decisions made by municipal officials with decision-making authority; (3) a practice so

persistent and widespread that it constitutes a custom through which constructive notice is

imposed upon policymakers; or (4) a failure by policymakers to properly train or supervise their

subordinates, such that the policymakers exercised 'deliberate indifference' to the rights of the

plaintiff."  *Moran v. Cnty. of Suffolk*, 11-CV-3704, 2015 WL 1321685, at *9 (E.D.N.Y.) (citing

*Parker v. City of Long Beach*, 563 F. App'x 39 [2d Cir. 2014] [failure to train]; *Matusick v. Erie*

*Cnty. Water Auth.*, 757 F.3d 31, 62 [2d Cir. 2014] [widespread and persistent practice]; *Hines v.*

*Albany Police Dep't*, 520 F. App'x 5, 7 [2d Cir. 2013] [actions of policymakers]; *Schnitter v.*

*City of Rochester*, 556 F. App'x 5, 8 [2d Cir. 2014] [failure to train or supervise]; *Missel v. Cnty. of Monroe*, 351 F. App'x 543, 545 [2d Cir. 2009] [formal policy and act of a person with policymaking authority for the municipality]).

After carefully considering the matter, the Court finds that, for the reasons set forth in County Defendants' memoranda of law, Plaintiff did not adequately plead municipal liability. (Dkt. No. 12, Attach. 4, at 13 [Cnty. Defs.' Mem. of Law]; Dkt. No. 41, Attach. 1, at 6 [Cnty. Defs.' Supp. Mem. of Law]; Dkt. No. 54, at 5 [Cnty. Defs.' Reply Mem. of Law].)  To those reasons, the Court adds the following analysis.

As identified by County Defendants, Plaintiff cites to two cases where Defendants allegedly violated individuals' constitutional rights under similar circumstances.  (Dkt. No. 31, ¶¶ 73, 74; Dkt. No. 41, Attach 1, at 6.)  However, the conduct in those two cases occurred well after the alleged constitutional violations that occurred here.  The first case identified by Plaintiff involves Joseph McElheny who was charged with murdering his four-month-old daughter in May 2010.  (Dkt. No. 31, ¶ 73.)  The second case identified by Plaintiff involves Michael Davis who was charged with murdering his girlfriend's two-and-one-half-year-old daughter in February 2015.  (*Id.* at ¶ 74.)

These incidents occurred well after Dr. Sikirica "falsely reported the cause of Matthew's death to be severe closed head injuries with cerebral edema due to blunt force trauma, and the manner of death to be a homicide," in his autopsy report on September 25, 2008.  (Dkt. No. 31, ¶¶ 52-55.)  Therefore, Plaintiff fails to allege any facts plausibly suggesting that the unlawful practices alleged here were occurring prior to Dr. Sikirica's autopsy report, and thus could not have been known by the County of Rensselaer in September 2008.  *See McLennon v. City of New*

*York*, 171 F. Supp. 3d 69, 99 (E.D.N.Y. 2016) (findings a failure to plead municipal liability

where alleged unlawful stop of motorist preceded four other unlawful stops).

Accordingly, Plaintiff failed to adequately plead his *Monell* claim.

In the alternative, the Court finds that Plaintiff's *Monell* cause of action against the

County of Rensselaer was untimely.

"[A]n actionable claim under § 1983 against a county or municipality depends on a harm

stemming from the municipality's 'policy or custom,' a cause of action against the municipality

does not necessarily accrue upon the occurrence of a harmful act, but only later when it is clear,

or should be clear, that the harmful act is the consequence of a county's 'policy or custom.'"

*Pinaud v. Cnty. of Suffolk*, 52 F.3d 1139, 1157 (2d Cir. 1995) (citing *Monell*, 436 U.S. at 694).

Thus, "the limitations period for [Plaintiff]'s *Monell* claims did not begin until such time as he

should have known that his [false arrest] resulted from the City's 'policy or custom.'" *Bradshaw*

*v. City of New York*, 15-CV-2166, 2017 WL 6387617, at *3 (E.D.N.Y. Aug. 22, 2017) (citing

*Birch v. City of New York*, 675 F. App'x 43, 45 [2d Cir. 2017]).

Here, Plaintiff alleges that County Defendants had a custom, policy and practice of

employing Dr. Sikirica who

> was overworked, and not careful in his work, did not adequately
> investigate the prior medical history of decedents, and had on other
> occasions similarly offered faulty diagnoses and cause of death
> determinations, which ignored obvious medical evidence of natural causes
> for infant and child deaths, in an effort to ultimately aid in the fabrication
> of evidence and malicious prosecutions of innocent individuals being
> charged with crimes by law enforcement agencies in Rensselaer County
> and by the Rensselaer County District Attorney's Office.

(Dkt. No. 31, ¶ 62.)  Plaintiff knew or should have known of Dr. Sikirica's inaccurate death

determination in October 2009 during his first criminal trial when he heard Dr. Sikirica's

testimony regarding his autopsy findings. (Dkt. No. 31, ¶¶ 57-61.) The medical evidence did

not change between the first criminal trial, when Dr. Sikirica first testified and Plaintiff's

acquittal on June 12, 2014. Thus, Plaintiff was or should have been aware in October 2009 of

Dr. Sikirica's inaccurate death determination and the County of Rensselaer's policy of

employing him. Therefore, Plaintiff's *Monell* claim against the County of Rensselaer was

untimely.

As a result, County Defendants' motion to dismiss Plaintiff's *Monell* cause of action is

granted.

### 6.    County Defendants' Defenses

#### a.    Absolute Immunity

After carefully considering the matter, the Court holds that, at this stage of the litigation,

it is inappropriate to dismiss claims against Dr. Sikirica based on absolute immunity. The Court

renders this finding generally for the reasons stated by Plaintiff in his memorandum of law. (Dkt.

No. 48 [Pl.'s Opp'n Mem. of Law].) To those reasons, the Court adds the following analysis.

Federal courts have held that absolute immunity on a § 1983 claim is "only available

where the defendant can show that his or her function is so sensitive as to require a total shield

from liability, and that absolute immunity is essential if that function is to be properly

performed." *Robison v. Via*, 821 F.2d 913, 919 (2d Cir. 1987). Thus, courts have extended a

"'cluster of immunities [to protect] the various participants in judge-supervised trials' including:

witnesses; grand jurors; jurors; prosecutors; sheriffs; coroners;[4] court reporters; clerks of the

court; bailiffs; town licensing board members, social workers, and arbitrators." *Newton v. City of*

*New York,* 738 F. Supp. 2d 397, 406-07 (S.D.N.Y. 2010).  When making determinations on

absolute immunity, courts look specifically at the function being performed rather than the

identity of the actor performing it.  *Ying Li*, 246 F. Supp. 3d at 643-44.

Based on the allegations in the Amended Complaint, the Court cannot find, as a matter of

law, that Dr. Sikirica was acting in a prosecutorial role rather than an investigatory one.  *Ying Li*,

246 F. Supp. 3d at 644 (citing *Hill v. City of New York*, 45 F.3d 653 [2d Cir. 1995] ["[W]hen it

may not be gleaned from the complaint whether the conduct objected to was performed . . . in an

advocacy or an investigatory role, the ability of absolute immunity from claims based on such

conduct cannot be decided as a matter of law on a motion to dismiss."]).

County Defendants improperly rely heavily on *Newton*.  As was held in *Ying Li*, the

position of a medical examiner conducting an autopsy pre-conviction is much different from the

position of a forensic scientist failing to conduct proper DNA testing (which would have

exonerated a plaintiff post-conviction).  *Ying Li*, 246 F. Supp. 3d at 644 (citing to *Newton*, 738 F.

Supp. 2d 397).  The Court is mindful of the public policy arguments regarding immunity for

medical examiners who perform autopsy reports, and this Decision and Order should not be

construed as to foreclose future motion practice on this point once additional information is

available.

---

[4]      *See Lambert v. Garlo*, 19 Ohio App. 3d 295 (Ohio Ct. App. 1985) (holding that a coroner
is entitled to absolute immunity where he makes reporting statements regarding his
investigation).

#### b.       Qualified Immunity

"Once qualified immunity is pleaded, plaintiff's complaint will be dismissed unless

defendant's alleged conduct, when committed, violated 'clearly established statutory or

constitutional rights of which a reasonable person would have known.'"  *Williams v. Smith*, 781

F.2d 319, 322 (2d Cir. 1986) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 815 [1982]).  As a

result, a qualified immunity inquiry in a civil rights case generally involves two issues: (1)

"whether the facts, viewed in the light most favorable to the plaintiff establish a constitutional

violation"; and (2) "whether it would be clear to a reasonable [official] that his conduct was

unlawful in the situation confronted."  *Sira v. Morton*, 380 F.3d 57, 68-69 (2d Cir. 2004), *accord*,

*Higazy v. Templeton*, 505 F.3d 161, 169, n.8 (2d Cir. 2007).  "The two are part of the same

injury," because "a police officer who violates clearly established law necessarily lacks an

objectively reasonable belief that his conduct was lawful."  *Okin v. Vill. of Cornwall-On-Hudson

Police Dep't*, 577 F.3d 415, 433 n.11 (2d Cir. 2009); *see also Nagle v. Marron*, 663 F.3d 100,

115 (2d Cir. 2011) ("[T]he focus . . . remains on whether, at the time of the alleged conduct, the

right was clearly established, rendering it objectively unreasonable for an official to think that his

action was lawful.").

After carefully considering the matter, the Court determines that for the reasons set forth

in Plaintiff's opposition memorandum of law, at this juncture it would be premature to determine

that Dr. Sikirica is entitled to qualified immunity.  (Dkt. Nos. 47, at 17; 48 at 13 [Pl.'s Opp'n

Mem. of Law].)  To those reasons, the Court adds the following analysis.

Plaintiff's right to be free from fabricated evidence in the form of falsified autopsy report

is clearly established.  *Zahrey*, 221 F.3d at 355-56; *Ricciuti,*124 F.3d at 130; *Weaver v. Brenner*,

40 F.3d 527, 533-34 (2d Cir. 1994); *Matthews v. City of New York*, 889 F. Supp. 2d 418, 441

(E.D.N.Y. 2012); *Anilao v. Spota*, 774 F. Supp. 2d 457, 492 (E.D.N.Y. 2011).  Moreover,

Plaintiff has alleged facts plausibly suggesting that Dr. Sikirica knowingly fabricated a false

autopsy report.  Accordingly, Dr. Sikirica is not entitled to qualified immunity at this time.  *See*

*Wise v. New York City Police Dept.*, 928 F. Supp. 355, 370 (S.D.N.Y. 1996) (holding that

"Parrino is not entitled to qualified immunity if it is determined at trial that he observed the

training room incident, that this incident created a hostile work environment, and that he did

nothing about it"); *Jackson v. City of New York*, 939 F. Supp. 2d 235, 258 (E.D.N.Y. 2013)

(denying police officers' motion for summary judgment on qualified immunity grounds where

officers observed another officer use excessive force against plaintiff but failed to intervene).

### B.      City Defendants' Cross-Claims

After carefully considering the matter, the Court finds that, for the reasons set forth in

County Defendants' memoranda of law, City Defendants' cross-claims are dismissed.  (Dkt.

Nos. 29, Attach. 1 [Cnty. Defs.' Mem. of Law]; Dkt. No. 42 [Cnty. Defs.' Reply Mem. of Law].)

The Court adds the following analysis.

The Supreme Court and Second Circuit have not ruled on the question of whether there is

a right to contribution between joint tortfeasors under 42 U.S.C. § 1983.  However, New York

District Courts have generally held that there is no right to contribution in § 1983 actions.  *De*

*Ratafia v. Cnty. Of Columbia,* 13-CV-0174, 2013 WL 5423871, at *18 (N.D.N.Y. Sept. 26,

2013) (Mordue, S.J.) ("[F]ederal law does not provide a basis for contribution for liability under

Section 1983."); *Crews v. Cnty. of Nassau,* 612 F. Supp. 2d 199, 208 (E.D.N.Y. 2009) (collecting

cases) ("[A]lthough there is no binding precedent on this issue, this Court agrees with the clear

majority of courts that, in general, permitting a right of contribution under Section 1983 would

conflict with the policies underlying the statute and is, therefore, inapplicable to defendants in

Section 1983 actions."); *Castro v. Cnty. of Nassau*, 739 F. Supp. 2d 153, 184 (E.D.N.Y. 2010)

("To the extent the County seeks indemnification and contribution on plaintiff's § 1983 claims,

they cannot do so as a matter of law.  No right to contribution exists under § 1983.  Nor is there a

federal right of indemnification under the statute."); *Hayden v. Hevesi*, 05-CV-0294, 2007 WL

496369, at *4 (W.D.N.Y. Feb. 12, 2007) ("First, the Court finds that there is no federal right to

indemnification under § 1983. . . . Second, there is also no statutory basis found in § 1983 for a

right of contribution and the Court will not construe one. . . On the basis of this authority, the

Court holds that the County defendants fail to state a third-party claim against the state defendant

[] for either contribution or indemnification arising out of plaintiff's § 1983 claim in this case.");

*Koch v. Mirza,* 869 F. Supp. 1031, 1041 (W.D.N.Y. 1994) ("[T]here is no basis on which to

hold, in this action, the State Defendants liable for indemnification or contribution under § 1401

of the N.Y. Civil Practice Laws & Rules, and the cross-claims alleging such liability should be

dismissed.");  *Taifer v. Catherines Stores Corp.*, 06-CV-2976, 2008 WL 7728651, at *3

(S.D.N.Y. May 28, 2008) (citing *Carrion v. City of New York,* 01-CV-2255. 2002 WL

31107747("[I]nsofar as the Clarkstown Defendants assert their cross-claims for contribution

against Catherines Defendants and the Spring Valley Defendants based on these claims,

'[s]ection 1983 does not provide an express right to contribution.'").

  Federal law does not provide a basis for contribution for liability under Section 1983.

*Crews,* 612 F. Supp. 2d at 208 (citing *Carrion*, 2002 WL 31107747, at *3); *Koch*, 869 F. Supp.

at 1040.  Moreover, courts have held that liability pursuant to N.Y. Civ. Prac. L. & R. § 1401

cannot be incorporated into § 1983 pursuant to § 1988 as the basis for the contribution.  *Rosado

v. New York City Housing Auth.*, 827 F. Supp. 179, 183 (S.D.N.Y. 1989); *Koch*, 869 F. Supp. at

1040.  There is no reason to apply state law to § 1983 "unless such application would assist in

obtaining damages through a civil actions for a denial of a federal civil right." *Koch*, 869 F. Supp. at 1041. However, the "[p]rinciples of contribution and indemnity are not of assistance to federal civil rights plaintiffs in pursuing their claims, and may inject issues into the litigation which could interfere with the prompt and orderly trial of such cases." *Id.* "[C]ommon law or statutory indemnity and contribution principles serve different interests than the constitutional values sought to be vindicated in a § 1983 action." *Id.*

In addition, even if this action went to trial and City Defendants were found liable, they would be liable for their own actions and not for the actions of County Defendants, whose actions, as alleged, were "distinct and divisible" from those of County Defendants. *Id.* at 1042 (citing *Rosado*, 827 F. Supp. at 183).

Therefore, City Defendant's cross-claim for contribution and indemnity from County Defendants is dismissed.

### C.    Plaintiff's Claims as to City Defendants

#### 1.    Malicious Prosecution

##### a.    Statute of Limitations Governing Plaintiff's Malicious Prosecution Claim

For the reasons set forth above in Point III.A.1.b. of this Decision and Order, City Defendants' motion to dismiss Plaintiff's malicious prosecution claim as time-barred is denied.

##### b.    Probable Cause

With regard to the third element of a malicious prosecution claim, "probable cause to prosecute consists of 'facts and circumstances [that] would lead a reasonably prudent person to believe the plaintiff guilty.'" *Ying Li*, 246 F. Supp. 3d at 611 (quoting *Boyd v. City of New York*, 336 F.3d 72, 76 [2d Cir. 2003]). While a "grand jury indictment 'gives rise to a presumption that

29

probable cause exists' and thereby defeats a claim for malicious prosecution" a plaintiff may

"establish that the indictment was produced by fraud, perjury, the suppression of evidence or

other police conduct undertaken in bad faith."  *Id.* at 611-12.

Here, the Amended Complaint alleges that Mason, Fountain, Colaneri, and Dr. Sikirica

initiated and continued a criminal proceeding against Plaintiff without probable cause.  (Dkt. No.

31, ¶¶ 87, 91.)  Plaintiff alleges that Mason, Fountain, and Colaneri used improper interrogation

techniques to elicit a confession from Plaintiff, which resulted in Plaintiff's being arrested and

falsely charged with murdering his son, Matthew.  (Dkt. No. 31 ¶¶ 44-51.)  Plaintiff further

alleges that City Defendants conspired with Dr. Sikirica to create an autopsy report that falsely

recorded Matthew's cause and manner of death.  (Dkt. No. 31, ¶ 54.)  Plaintiff alleges the

autopsy report was then conveyed to prosecutors and utilized in the prosecution of Plaintiff.  (*Id.*)

These allegations plausibly suggest that the indictment was produced by fraud, perjury,

the suppression of evidence or other police conduct undertaken in bad faith.

Therefore, City Defendants' motion to dismiss Plaintiff's malicious prosecution claim is

denied.

### 2.    Violation of the Right to a Fair Trial

For the reasons set forth above in Point III.A.2. of this Decision and Order, Plaintiff's

claim for violation of his right to a fair trial accrued at the latest when his criminal conviction

was overturned on February 20, 2014.  Therefore, this claim was untimely and City Defendants'

motion to dismiss is granted.

### 3.    Failure to Intervene

The statute of limitations for a claim based on failure to intervene accrues when the failure to intervene occurs.  *Roundtree v. City of New York*, 15-CV-6582, 2018 WL 443751, at *3 (S.D.N.Y. Jan. 16, 2018).  Here, Plaintiff's allegations as to Mason, Fountain, and Colaneri relate to conduct that occurred between September 21, 2008, and September 23, 2008.  (Dkt. No. 31, ¶¶ 35-39, 44, 51.)  Thus, Plaintiff's failure to intervene claim is untimely and City Defendants' motion to dismiss Plaintiff's claim for failure to intervene is granted.

### 4.    Conspiracy

#### a.    State Actor

"To prove a § 1983 conspiracy, a plaintiff must show: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999) (citing *Carson v. Lewis*, 35 F. Supp. 2d 250, 271 [E.D.N.Y. 1999]; *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 131 [2d Cir.1997]).

City Defendants argue that Plaintiff's claim for conspiracy should be dismissed because there is not a private actor alleged to have taken part in the agreement.  (Dkt. No. 59, at Point IV.)  As outlined in *Pangburn*, a private actor is not required if it is alleged that the agreement is between two or more state actors.  *Pangburn*, 200 F.3d at 72.  Therefore, City Defendants' motion to dismiss Plaintiff's claim of conspiracy for failing to allege an agreement with a private actor is denied.

#### b.    Statute of Limitations

As discussed above in Point III.A.4. of this Decision and Order, City Defendants' motion to dismiss Plaintiff's conspiracy cause of action is denied to the extent that Plaintiff's conspiracy

31

claim relates to a conspiracy to maliciously prosecute him, and granted to the extent that

Plaintiff's conspiracy claim relates to a conspiracy to violate his right to a fair trial.

**5.** ***Monell* Claim**

After carefully considering the matter, the Court determines that, for the reasons set forth

in City Defendants' memoranda of law and as set forth more fully above in Point III.A.5. of this

Decision and Order, Plaintiff did not adequately plead municipal liability. (Dkt. No. 40, Attach.

2, at 11 [City Defs.' Mem. of Law]; Dkt. No. 59, at 7 [City Defs.' Reply Mem. of Law].)

In the alternative, the Court finds that, as set forth above in Point III.A.5. of this Decision

and Order, Plaintiff's *Monell* cause of action against the City of Troy was untimely.  Here, at the

absolute latest Plaintiff should have known of the City of Troy's custom, policy, and practice, of

"unlawful interrogation tactics that resulted in or were likely to result in coerced false

confessions," is February 20, 2014.  (Dkt. No. 47, at 17 [citing Dkt No. 31, ¶ 69].)  By February

20, 2014, Plaintiff had (1) personally experienced City Defendants' interrogation tactics, (2)

years after the interrogation to obtain the necessary sleep, sustenance, and wherewithal to

recognize that his confession was inaccurate, (3) the opportunity to witness City Defendants

testify in his criminal trial, and (4) received a favorable ruling from the Court of Appeals

confirming that his confession was coerced as a matter of law.  (Dkt. No. 31, ¶¶ 35-62.)

Therefore, the statute of limitations on Plaintiff's *Monell* claim against the City of Troy

began when his criminal conviction was overturned by the New York State Court of Appeals on

February 20, 2014.  Plaintiff did not file his Complaint for three years and 112 days after

February 20, 2014, and has never indicated that his delay was due to a lack of awareness of any

alleged policy or custom.  Accordingly, Plaintiff's *Monell* claim against the City of Troy must be

dismissed as untimely.

### 6.    City Defendants' Defenses

As set forth above in Point III.A.6.b. of this Decision and Order, after carefully considering the matter, the Court determines that for the reasons set forth in Plaintiff's opposition memorandum of law, at this juncture it would be premature to determine whether City Defendants are entitled to qualified immunity.  (Dkt. Nos. 47, at 17; Dkt. No. 48 at 13 [Pl.'s Opp'n Mem. of Law].)  To those reasons, the Court adds the following analysis.

Here, Plaintiff's right to be free from fabricated evidence in the form of a coerced confession is clearly established.  *Zahrey*, 221 F.3d at 355-56; *Ricciuti*, 124 F.3d at 130; *Weaver v. Brenner*, 40 F.3d 527, 533-34 (2d Cir. 1994); *Matthews v. City of New York*, 889 F. Supp. 2d 418, 441 (E.D.N.Y. 2012); *Anilao v. Spota*, 774 F. Supp. 2d 457, 492 (E.D.N.Y. 2011). Accordingly, Defendants are not entitled to qualified immunity at this time.

**ACCORDINGLY,** it is

**ORDERED** that County Defendants' motion to dismiss Plaintiff's Amended Complaint (Dkt. Nos. 12) is **GRANTED in part** and **DENIED in part**, in that Plaintiff's malicious prosecution claim **SURVIVES** County Defendants' motion to dismiss; Plaintiff's claim for violation of his right to a fair trial is **DISMISSED**; Plaintiff's claim for failure to intervene is **DISMISSED**; Plaintiff's claim for conspiracy **SURVIVES** to the extent it contemplates an agreement to maliciously prosecute Plaintiff and is **DISMISSED** to the extent it contemplates a conspiracy to violate Plaintiff's right to a fair trial; and Plaintiff's claim for municipal liability against the County of Rensselaer is **DISMISSED**; and it is further

**ORDERED** that County Defendants' motion to dismiss City Defendants' cross-claims (Dkt. No. 29) is **GRANTED** and City Defendants' cross-claims are **DISMISSED**; and it is further

**ORDERED** that City Defendants' motion to dismiss Plaintiff's Amended Complaint (Dkt. No. 40) is **GRANTED in part** and **DENIED in part**, in that Plaintiff's malicious prosecution claim **SURVIVES** City Defendants' motion to dismiss; Plaintiff's claim for violation of his right to a fair trial is **DISMISSED**; Plaintiff's claim for failure to intervene is **DISMISSED**; Plaintiff's claim for conspiracy **SURVIVES** to the extent it contemplates an agreement to maliciously prosecute Plaintiff and is **DISMISSED** to the extent it contemplates a conspiracy to violate Plaintiff's right to a fair trial; and Plaintiff's claim for municipal liability against the City of Troy is **DISMISSED**; and it is further

**ORDERED** that Defendants file an answer to the Plaintiff's Amended Complaint (Dkt. No. 31) within 14 days of the date of this Decision & Order pursuant to Fed.R.Civ.P. Rule 12(a)(4)(a) and this case is referred back to Magistrate Judge Stewart for the setting of pretrial scheduling deadlines.

Dated:  March 22, 2018
        Syracuse, New York

Hon. Glenn T. Suddaby
Chief U.S. District Judge

34