**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

ADRIAN THOMAS,

                        Plaintiff,

      v.                                        1:17-CV-626
                                                      (DJS)

ADAM MASON, RONALD FOUNTAIN,
TIM COLANERI, and MICHAEL SIKIRICA,

                        Defendants.
_____

| | |
|---|---|
| **APPEARANCES:** | **OF COUNSEL:** |
| OFFICE OF BRETT H. KLEIN, PLLC<br>Counsel for Plaintiff<br>305 Broadway<br>Suite 600<br>New York, New York 10007 | BRETT H. KLEIN, ESQ. |
| PATTISON SAMPSON GINSBERG<br>& GRIFFIN, PLLC<br>Counsel for Defendants Mason, Fountain<br>and Colaneri<br>22 First Street<br>P.O. Box 208<br>Troy, New York 12181-0208 | JOSEPH T. PERKINS, ESQ. |
| BAILEY JOHNSON, PC<br>Counsel for Defendant Sikirica<br>5 Pine West Plaza<br>Suite 507<br>Washington Avenue Extension<br>Albany, New York 12205 | CRYSTAL R. PECK, ESQ.<br>JOHN W. BAILEY, ESQ. |

**DANIEL J. STEWART
United States Magistrate Judge**

## DECISION and ORDER

### I. BACKGROUND

Plaintiff commenced this action with the filing of a Complaint on June 12, 2017. Dkt. No. 1. Plaintiff subsequently filed an Amended Complaint. Dkt. No. 31, Am. Compl. Generally stated, the allegations in the Amended Complaint concern the arrest and prosecution of Plaintiff on criminal charges in Rensselaer County, New York. *See generally id.* Plaintiff was charged with the murder of his son and convicted following trial. *Id.* at ¶ 2. That conviction was overturned, *People v. Thomas*, 22 N.Y.3d 629 (2014), and Plaintiff was ultimately acquitted at a retrial. Am. Compl. at ¶ 7. The Amended Complaint included, *inter alia*, a claim that each Defendant denied him his right to a fair trial through their "creation, forwarding to prosecutors, and use of false, fabricated evidence." *Id.* at ¶ 97. That claim was subsequently dismissed as barred by the statute of limitations. *Thomas v. City of Troy*, 293 F. Supp. 3d 282, 295 (N.D.N.Y. 2018).[1] Presently pending is Plaintiff's Motion for Reconsideration of that dismissal in light of the Supreme Court's decision in *McDonough v. Smith*, 139 S. Ct. 2149 (2019). Dkt. No. 121. Defendants oppose the Motion. Dkt. Nos. 122 & 123.

---

[1] That Decision was issued by Chief United States District Judge Glenn T. Suddaby. The parties have since consented to have the undersigned handle all further proceedings pursuant to 28 U.S.C. § 636(c). Dkt. No. 111. This Court may properly reconsider the prior ruling even though it was made by Judge Suddaby. *Wingate v. City of New York*, 2017 WL 3498698, at *2 (N.D.N.Y. Aug. 15, 2017).

**II. DISCUSSION**

Generally, the law of the case doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618 (1983). Under appropriate circumstances, however, reconsideration is appropriate. *See* FED. R. CIV. P. 60(b); N.D.N.Y.L.R. 7.1(g). "The major grounds justifying reconsideration are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (citing authorities) (internal quotation omitted); *see also Washington Nat. Life Ins. Co. of New York v. Morgan Stanley & Co. Inc.*, 974 F. Supp. 214, 219 (S.D.N.Y. 1997) (citing cases) ("Courts may reconsider previous holdings in the same litigation if there has been an intervening change in the law."). An opinion from the Supreme Court, of course, is a decision that could justify reconsideration of a prior ruling. *United States v. Plugh*, 648 F.3d 118, 124 (2d Cir. 2011). While Defendants oppose the Motion, they do not do so on the ground that *McDonough* is not an intervening change of law. *See* Dkt. Nos. 122 & 123. The parties instead dispute whether the particular facts of this case are controlled by the outcome in *McDonough*.

The question presented in *McDonough* was when a cause of action for a fabricated-evidence claim accrues. *McDonough v. Smith*, 139 S. Ct. at 2153. The Second Circuit had concluded that such a claim was distinct "from a malicious prosecution claim, and that it accrued when (1) McDonough learned that the evidence was false and was used

3

against him during the criminal proceedings; and (2) he suffered a loss of liberty as a result of that evidence." *McDonough v. Smith*, 898 F.3d 259, 265 (2d Cir. 2018). The Supreme Court reversed, specifically analogizing the claim to one for malicious prosecution, finding that such a claim could not be brought prior to the favorable termination of the prosecution. *McDonough v. Smith*, 139 S. Ct. at 2156. The Court went on to conclude that "[t]here is not a complete and present cause of action to bring a fabricated-evidence challenge to criminal proceedings *while those criminal proceedings are ongoing*." 139 S. Ct. at 2158 (emphasis added) (internal quotations and citations omitted).

The New York Court of Appeals decision in Plaintiff's case expressly did not terminate the criminal proceedings, but ordered a new trial. *People v. Thomas*, 22 N.Y.3d at 647. The criminal proceedings against Plaintiff, therefore, were ongoing even after the Court of Appeals decision. In fact, a court appearance to schedule the new trial was held less than two weeks after the Court of Appeals decision. *See* Bob Gardinier, *New Trial Date Set in 2008 Baby Death*, TIMES UNION (Mar. 5, 2014), https://www.timesunion.com/local/article/New-trial-date-set-in-2008-baby-death 5291037.php. The retrial began in May 2014. Am. Compl. at ¶ 63. Plaintiff was acquitted in June 2014. *Id.* at ¶ 7. Under the plain terms of the Supreme Court's decision, therefore, it would seem that the initial determination that Plaintiff's fair trial claim accrued in February 2014 at the time of the Court of Appeals decision does not survive *McDonough*. Instead, after that opinion it appears clear that Plaintiff's claim regarding

4

"fabricated evidence began to run when the criminal proceedings against him terminated in his favor - that is, when he was acquitted at the end of his second trial." *McDonough v. Smith*, 139 S. Ct. at 2161.

Defendants contend that Plaintiff articulates an "overly broad reading" of *McDonough*, Dkt. No. 122 at p. 1, and instead urge the Court to focus on the Supreme Court's decision in *Heck v. Humphrey*, 512 U.S. 477 (1994). *Id.* at p. 2. In *McDonough*, the Court stated that "[o]nly once the criminal proceeding has ended in the defendant's favor, or a resulting conviction has been invalidated within the meaning of *Heck* . . . will the statute of limitations begin to run." *McDonough v. Smith*, 139 S. Ct. at 2158 (citing *Heck v. Humphrey*, 512 U.S. at 486-487). Counsel for Defendant Sikirica argues that this case is controlled by the latter half of this statement and that the Court of Appeals decision in Plaintiff's case invalidated Plaintiff's conviction within the meaning of *Heck* and so that event began the limitations period. *See* Dkt. No. 122 at p. 2.[2] Defendants' position is not persuasive for several reasons.

First, as Judge Suddaby has already recognized in this case, the reversal of a criminal conviction with a remand for a new trial is not a "favorable termination" for purposes of establishing the elements of a malicious prosecution claim, *Thomas v. City of Troy*, 293 F. Supp. 3d at 294 (citing *DiBlasio v. City of New York*, 102 F.3d 654, 658 (2d Cir. 1996)), and so it is not at all clear that such a reversal would be considered an

---

[2] The remaining Defendants adopt this argument as well. Dkt. No. 123.

invalidation of the conviction within the meaning of *Heck*. *Stein v. Cty. of Westchester, N.Y.*, 410 F. Supp. 2d 175, 179-80 (S.D.N.Y. 2006) (analogizing *Heck*'s invalidation requirement to malicious prosecution favorable termination rule).

Second, while this case differs factually from *McDonough*, largely with regard to the fact that Plaintiff here does not name the actual prosecutor as a defendant, the policy considerations emphasized by the Court in reaching its conclusion are just as strong here as they were in *McDonough*. Those considerations undercut Defendants' position. Chief among these concerns was that requiring plaintiffs to commence civil actions prior to the conclusion of criminal proceedings "would run counter to core principles of federalism, comity, consistency and judicial economy," *McDonough v. Smith*, 139 S. Ct. at 2158, by creating a system under which the civil action might be used to collaterally attack the criminal proceedings and increasing the risk of "conflicting civil and criminal judgments." *Id.* at 2157. The Court also recognized the practical complications of requiring a fabricated evidence claim to be brought prior to the close of criminal proceedings. Specifically, the Court was concerned that a plaintiff required to do so "risks tipping his hand as to his defense strategy, undermining his privilege against self-incrimination, and taking on discovery obligations not required in the criminal context." *McDonough v. Smith*, 139 S. Ct. at 2158.[3]

---

[3] These concerns likely may not have been implicated here given how quickly the retrial was scheduled and held, but finding that Plaintiff's claim accrued at the time of the Court of Appeals reversal would have required Plaintiff to devote time and attention to commencing a civil claim at the same time he was preparing for a criminal retrial which would present a similarly difficult choice for the Plaintiff. *McDonough v. Smith*, 139 S. Ct. at 2158.

6

Indeed, finding that this claim accrued only after Plaintiff's acquittal is entirely consistent with what the *McDonough* Court saw as *Heck*'s "pragmatic concerns with avoiding parallel criminal and civil litigation over the same subject matter and the related possibility of conflicting civil and criminal judgments." *McDonough v. Smith*, 139 S. Ct. at 2157 (citing *Heck v. Humphrey*, 512 U.S. at 484-85).[4] Under *McDonough* the Court concludes that Plaintiff's fabricated-evidence claim accrued upon his ultimate acquittal, not the reversal of his initial conviction. The Court, therefore, grants the Motion for Reconsideration and Plaintiff's fabricated-evidence claim is reinstated.

### III. CONCLUSION

**ACCORDINGLY**, it is

**ORDERED,** that Plaintiff's Motion for Reconsideration is **GRANTED**.

Dated: November 18, 2019
      Albany, New York

Daniel J. Stewart
U.S. Magistrate Judge

---

[4] The individual Defendants employed by the City of Troy note in opposing the Motion that they did not testify at Plaintiff's retrial and that it did not include evidence regarding Plaintiff's alleged confession. Dkt. No. 123. They offer no explanation, however, as to why this should alter the Court's analysis.