UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
―――――――――――――――――――――――――――――

ADRIAN THOMAS,

                Plaintiff,

   -against-                                    Civil Case No.: 17-cv-626
                                                                           (GTS/DJS)

ADAM R. MASON, Individually, RONALD FOUNTAIN,
Individually, TIM COLANERI, Individually, and
MICHAEL SIKIRICA, Individually,

                Defendants.
―――――――――――――――――――――――――――――

## MEMORANDUM OF LAW

―――――――――――――――――――――――――――――

Dated: June 14, 2021                                  Bailey, Johnson & Peck, P.C.

                                                            By: _____s/_____
                                                                 Crystal R. Peck
                                                            *Attorneys for Defendant, Michael Sikirica*
                                                             5 Pine West Plaza, Suite 507
                                                             Washington Avenue Extension
                                                             Albany, NY 12205

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT……………………………………………………….. 5

ARGUMENT………………………………………………………………………… 6

Summary Judgment Standard………………………………………………………… 6

POINT I: PLAINTIFF'S CAUSE OF ACTION FOR MALICIOUS PROSECUTION AND VIOLATION OF HIS RIGHT TO A FAIR TRIAL AS ASSERTED AGIANST DR. SIKIRICA SHOULD BE DISMISSED…………………………………………………………………………… 7

Malicious Prosecution…………………………………………………………………... 7

Right to Fair Trial…………………………………………………………………….. 7

A.   Dr. Sikirica's Autopsy Report and Cause of Death Determination was Neither False nor Fabricated…………………………………………………………………… 8

   *i. Dr. Sikrica's omission of the term "sepsis"*
      *did not create a materially false report……………………………………………..* 8

   *ii. Dr. Sikirica's determination that M.T.'s cause of death was subdural hematoma with*
      *cerebral edema due to blunt force trauma was not false or fabricated………….*9

POINT II: PLAINTIFF'S FOURTH CAUSE OF ACTION FOR
CONSPIRACY SHOULD BE DISMISSED…………………………………………12

  **A.**  Plaintiff Cannot Raise a Material Question of Fact
      as to His §1983 Conspiracy Claim………………………………………………12
  **B.**  Plaintiff Cannot Raise a Material Question of Fact
      as to his §1985 Conspiracy Claim……………………………………………….. 14

POINT III: DR. SIKIRICA IS ENTITLED TO IMMUNITY………………………………14

CONCLUSION……………………………………………………………………17

# **TABLE OF AUTHORITY**

Page(s)

<u>Federal Cases</u>

14 Civ. 218,
  2015 WL 3953532 (S.D.N.Y. June 29, 2015) ............................................................................ 6
*Beyer v. Cty. of Nassau*,
  524 F.3d 160 (2d Cir. 2008) ..................................................................................................... 6
*Cine SK8, Inc. v Town of Henrietta*,
  507 F3d 778 (2d Cir 2007) ..................................................................................................... 13
*Costello v. Milano*,
  20 F.Supp.3d 406 (S.D.N.Y. 2014) ............................................................................. 7, 14, 15
*Ferris v. City of Cadillac Mich.*,
  726 Fed.Appx. 473 (5th Cir. 2018) ....................................................................................... 16
*Ferris v. City of Cadillac*,
  272 F.Supp.3d 1003 (W.D. M.I. 2017) ...................................................................... 15, 16, 17
*Fowler v Robinson,* 94-CV-836,
  1996 WL 67994 (N.D.N.Y. Feb. 15, 1996) ............................................................................. 7
*Galbraith v. County of Santa Clara*,
  307 F.3d 1119 (9th Cir. 2002) ............................................................................................... 17
*Gallo v. Prudential Residential Servs., Ltd. P'ship*,
  22 F.3d 1219 (2d Cir. 1994) ..................................................................................................... 6
*Garlick v. Lee*,
  464 F.Supp.3d 611 (S.D.N.Y. 2020) ..................................................................................... 12
*Garnett v Undercover Officer C0039*,
  838 F3d 265 (2d Cir 2016) ....................................................................................................... 8
*Gregory v. City of Lousville*,
  444 F.3d 725 (6th Cir. 2006) ................................................................................................. 16
*Rowe Entertainment Inc. v. William Morris Agency, Inc.*,
  167 Fed. Appx. 227 (2d Cir. 2005) ........................................................................................ 14
*Israel v City of New York*,
  2018 WL 11219076 (S.D.N.Y. Sept. 29, 2018) ...................................................................... 7
*Janetka v. Dabe*,
  892 F.2d 187 (2d Cir. 1989) ..................................................................................................... 7
*Malley v. Briggs*,
  475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986) .......................................................... 15
*Moldowan v. City of Warren*,
  578 F.3d 351 (6th Cir. 2009) ................................................................................................. 16
*Munafo v. Metro. Transp. Auth.*,
  285 F.3d 201 (2d Cir.2002) .................................................................................................... 14
*Ostensen v Suffolk County*,
  236 Fed Appx 651 (2d Cir 2007) .................................................................................... 12, 14
*Pangburn v. Culbertson*,
  200 F.3d 65 (2d Cir.1999) ...................................................................................................... 12

*Pierce v. Gilchrist*,
   359 F.3d 1279 (10th Cir. 2004) ................................................................................... 17
*Posr*,
   944 F.2d ........................................................................................................................ 7
*Ricciuti v. N.Y.C. Transit Auth.*,
   70 F.Supp.2d 300 (S.D.N.Y. 1999) ............................................................................... 8
*Rohman v. N.Y.C. Transit Auth.*,
   215 F.3d 208 (2d Cir. 2000) .......................................................................................... 7
*San Filippo v. U.S. Trust Co. of New York*,
   737 F.2d 246 (2d Cir. 1984) ........................................................................................ 13
*Thomas v. City of Troy*,
   293 F.Supp.3d 282 ......................................................................................................... 7
*Thomas v Roach*,
   165 F3d 137 (2d Cir 1999) .......................................................................................... 14
*Zahrey v City of New York*,
   2009 WL 1024261 (S.D.N.Y. Apr. 15, 2009) ............................................................. 13

State Cases

2016 N.Y. Op. Atty. Gen. No. 4 ........................................................................................ 13
*Kirchner v County of Niagara*,
   153 AD3d 1572 (4th Dept 2017) ................................................................................. 11
*Martin v. City of Albany*,
   396 N.Y.S.2d 612 (N.Y. 1977) ...................................................................................... 7

State Statutes

County Law § 674 ............................................................................................................. 13

Federal Rules

Fed. R. Civ, P. 56(a) .......................................................................................................... 6
Rule 56 of the Federal Rules of Civil Procedure ............................................................... 5

**PRELIMINARY STATEMENT**

Defendant Dr. Michael Sikirica (hereinafter "Dr. Sikirica") submits the following Memorandum of Law in support of his Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. A summary of the facts pertinent to this Motion has been included in Dr. Sikirica's Statement of Materials Facts submitted pursuant to Local Rule 7.1.

Plaintiff has brought this action against Dr. Sikirica along with Defendant City of Troy Police Officers Mason, Colaneri, and Fountain alleging that the individual defendants violated his right to fair trial, engaged in malicious prosecution, and conspired against him to violate his constitutional rights. In his Amended Complaint, Plaintiff alleges that the Defendant police officers interrogated him for 9 ½ hours which culminated in a coerced confession that Plaintiff injured his 4 month old son, M.T[1]. See, Dkt. No. 31. Plaintiff alleges that his confession was the basis for his arrest on September 23, 2008 for the murder of his son.

With respect to Dr. Sikirica, Plaintiff alleges that "on September 25, 2008,…Dr. Sikirica met with defendant Mason, and then performed the autopsy of M.T. in the presence of Defendant Mason and the Rensselaer County District Attorney Richard McNally as well as Assistant District Attorney Christa Book. Notwithstanding the overwhelming medical evidence that Matthew died of septic shock caused by a bacterial infection, and notwithstanding that Dr. Sikirica would later admit at Mr. Thomas' trial that he was aware that Matthew had streptococcus pneumonia bacteria in his bloodstream suggesting sepsis, Dr. Sikirica failed to document sepsis in his list of anatomic diagnoses in his autopsy report." Plaintiff goes on to allege that "Dr. Sikirica falsely recorded the cause of Matthew's death to be closed head injuries with cerebral edema due to blunt force trauma and the manner of death to be homicide." Dkt. 31

---

[1] In accordance with Local Rule 8.1 references to minor's names, including the decedent (M.T), are referred to by initials only.

¶¶ 52-54.  Plaintiff claims that Dr. Sikricia rendered this false medical opinion to ensure consistency with Thomas' false coerced confession and otherwise in furtherance of a conspiracy with the defendant officers to falsely accuse and maliciously prosecute Mr. Thomas for the murder of his child."

As discussed below, the record in this matter reveals that there is no genuine issue of fact as to whether Dr. Sikirica falsified his autopsy findings.  While there was a disagreement in interpretations of findings between the 7 physicians who testified at the criminal trials, none of the testimony suggestions that Dr. Sikirica's findings were fabricated or false.  There has also been no evidence proffered by Plaintiff that Dr. Sikirica deviated from accepted practices in preparing his report or rendering his cause of death determination.

## ARGUMENT

### Summary Judgment Standard

Summary judgment is warranted where the moving party shows that "there is no genuine dispute as to any material fact" and that it "is entitled to judgment as a matter of law." Fed. R. Civ, P. 56(a). "A dispute about a 'genuine issue' exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor." *Beyer v. Cty. of Nassau*, 524 F.3d 160, 163 (2d Cir. 2008). "When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Gallo v. Prudential Residential Servs., Ltd. P'ship,* 22 F.3d 1219, 1224 (2d Cir. 1994). "'[T]hat opposing parties assert competing versions of the same event is not in itself sufficient to preclude summary judgment,' in that contradictory testimony only establishes a 'genuine' issue for trial if it 'lead[s] to a different legal outcome.' " *Yi Fu Chen v. Spring Tailor, LLC*, 14 Civ. 218, 2015 WL 3953532, at *4

6

(S.D.N.Y. June 29, 2015); *Israel v City of New York,* 16 CIV. 6809, 2018 WL 11219076, at *3 (S.D.N.Y. Sept. 29, 2018)

### POINT I

### PLAINTIFF'S CAUSE OF ACTION FOR MALICIOUS PROSECUTION AND VIOLATION OF HIS RIGHT TO A FAIR TRIAL AS ASSERTED AGIANST DR. SIKIRICA SHOULD BE DISMISSED

Malicious Prosecution

To prevail on a New York or § 1983 claim for malicious prosecution, a plaintiff must establish that: (1) the defendant commenced or continued a criminal proceeding against the plaintiff; (2) that the proceeding terminated in the plaintiff's favor; (3) that there was no probable cause for the criminal proceeding; and (4) that the defendant commenced the criminal proceeding out of malice. *Fowler v Robinson,* 94-CV-836, 1996 WL 67994, at *8 (N.D.N.Y. Feb. 15, 1996) *citing Posr,* 944 F.2d at 100 ; *Janetka v. Dabe,* 892 F.2d 187, 189 (2d Cir. 1989); *Martin v. City of Albany,* 396 N.Y.S.2d 612, 614 (N.Y. 1977). "[I]n order for an individual to 'initiate' a prosecution ... it must be shown that defendant played an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act." *Rohman v. N.Y.C. Transit Auth.*, 215 F.3d 208, 217 (2d Cir. 2000). A defendant can be said to have "initiated a prosecution by creating material, false information and forwarding that information to a prosecutor or by withholding material information from a prosecutor." *Thomas v. City of Troy*, 293 F.Supp.3d 282, 294 *citing Costello v. Milano*, 20 F.Supp.3d 406, 415 (S.D.N.Y. 2014).

Right to Fair Trial

In order to succeed on a claim for a denial of the right to a fair trial based on an allegation that an official falsified information, Plaintiff "must prove by a preponderance of the evidence

7

that the official created false information, forwarded the false information to prosecutors, and the false information was likely to influence a jury's decision." *Garnett v Undercover Officer C0039*, 838 F3d 265, 279-80 (2d Cir 2016) *citing see, e.g.*, *Ricciuti v. N.Y.C. Transit Auth.*, 70 F.Supp.2d 300, 331 (S.D.N.Y. 1999). In *Garnett*, the Second Circuit explained that the requirements that the information be both false and likely to influence a jury's decision constrain the types of information that can serve as the basis for a denial of the right to a fair trial claim. *Garnett*, 838 F3d at 280.

Here, Plaintiff's causes of action for malicious prosecution and violation of his right to fair trial fail as the record does not establish a question of fact as to whether Dr. Sikrica's autopsy report was false.

**A.    Dr. Sikirica's Autopsy Report and Cause of Death Determination was Neither False nor Fabricated.**

  *i. Dr. Sikrica's omission of the term "sepsis" did not create a materially false report.*

Section II under Anatomic Diagnoses of Dr. Sikirica's autopsy reports lists "blood culture positive for streptococcus pneumonia on initial presentation to hospital; acute and chronic pneumonia with severe atelectasis. Sikirica Ex. 3, p. 12. This is a description of a severe bacteria infection which is what "sepsis" is and one that medical professionals understand. Ex. BB pp. 171-72, 211-12, Ex. R. p. 34 (P021127)(describing "sepsis" as a biological organism in the blood); Ex. S p. 33 (P021235)(stating "sepsis just is a term meaning you have an infected bloodstream". Dr. Jenny testified that the blood culture was consistent with infection and is a cause of sepsis. Ex. S pp. 53, 74 (P021255, P021276). Dr. Klein was specifically asked at the 2014 trial if he understood the positive blood culture to mean sepsis:

> Q. And although it doesn't mention the word sepsis, the medical examiner
> doesn't disagree that sepsis is there?
> A. No. And he identified the positive blood culture.

8

Ex. U, p. 68 (P021613).  Dr. Jan Leestma also testified that the blood culture finding was indicative of sepsis.  Ex. V p. 35 (P021707)(stating "the child had positive blood culture.  There was bacteria in his blood.  I don't know what more you need, really, to nail down the concept of blood poisoning or sepsis").  Beyond that, Dr. Sikirica testified in every proceeding, Grand Jury and both criminal trials, that M.T. showed evidence of bacterial infection which complicated the head trauma.

Simply, there is absolutely no evidence in the record that Dr. Sikirica's reference to the blood culture was misleading as to whether it indicated a very serious infection.

*ii. Dr. Sikirica's determination that M.T.'s cause of death was subdural hematoma with cerebral edema due to blunt force trauma was not false or fabricated.*

Every medical expert has agreed that M.T. had a subdural hematoma and subgalea hemorrhages.  Ex. V. p. 45 (P021717)(M.T.'s subdural hematoma was a contributing cause of death) Ex. P, p. 47 (A1979); There are disagreements as to whether M.T.'s chronic subdural hematoma dated back to birth or was more recent.  There is a disagreement between Dr. Leestma and Dr. Waldman as to whether the CT scan showed acute bleeding.  Ex. P, p. 162 (A2095).  But there is no disagreement that M.T. had a subdural hematoma or that subdural hematomas are caused by trauma.  Ex. P, p. 93 (A2026), Ex. V. p. 45 (P021717); Ex. R p. 27 (P021120)("they are caused by trauma, varying degree).  Indeed, while Dr. Leestma testified he could not determine M.T.'s subgalea hematoma got there, he opined "there was an apparent fall some days before admission.  That certainly could explain why there would be a bruise in that area."  Ex. V. pp. 46-47 (P021718-19).  Dr. Leestma further opined that there could have been a prior injury there and the sepsis and coagulopathy contributed to the hemorrhage.  Ex. V. p. 47 (P021719). Dr. Waldman's testified that blunt force trauma caused the subdural hematomas and caused

9

M.T.'s death.  P. 28 (P021121); Dr. Sikirica found both a chronic and acute subdural hematoma, along with subgalea hemorrhages and subarachnoid hemorrhage.  Dr. Sikirica's findings of a chronic and acute subdural hematoma are consistent with Dr. Waldman's interpretation of the M.T.'s CT scan.  His findings are also consistent with M.T.'s retinal hemorrhages.  Ex. P, p. 2190, Ex. O p., 2047, Ex. S, p. 619.

M.T.'s symptoms consistent with head trauma include extensive retinal hemorrhages, acute subdural hematomas, significant alteration of neurological function, and coma.  Ex. R, p. 34 (P021126).  Dr. Waldman testified that symptoms such as those "without a history of significant injury raises a high level of suspicion for inflicted or nonaccidental injury".  Ex. R, p. 34 (P021126).  Dr. Jenny testified after reviewing the autopsy records that M.T. "had acute trauma at autopsy", "he had old trauma and obvious signs of new trauma.  He had old bruises under his scalp and new bruising under his scalp, old subdural and new subdural.  So, he clearly had more than one episode of impact to his head." Ex. S p. 76 (P021278); p. 78 (P021279).

Similarly, the medical experts all generally agree that M.T. had a subdural hematoma and subgalea hemorrhages caused by some form of trauma.  In fact, the *only* medical expert in this case who has opined that there was no evidence trauma is Dr. Maloney who provides no explanation as to why she disagrees with even Dr. Leestma's finding of trauma. (Dr. Klein testified that he was not qualified to provide an opinion as to trauma [Ex. U p. 980 [P021615 ]).

Ultimately between experts at the criminal trial and in this civil action, Dr, Waldman, Dr. Jenny, and Dr. Baden agree with Dr. Sikirica's cause of death determination.  Ex. Baden-2.  Dr. Leestma acknowledges that there was trauma but opines it was secondary to sepsis.  Dr. Klein acknowledged that he could not comment on head trauma or brain injury because it was outside his qualifications.  And Dr. Maloney inexplicable denies any trauma and appears to question

whether M.T. even had a subdural hematoma. Ex. CC p. 4. This record is proof that, apart from Dr. Maloney, the experts generally agreed on the objective findings made by Dr. Sikirica but disagreed on their interpretation of those findings. A disagreement among experts does not create a material question of fact as to whether Dr. Sikirica falsified his cause of death determination. *See, i.e. Kirchner v County of Niagara*, 153 AD3d 1572, 1574 (4th Dept 2017)(stating "we reject…that there is a triable issue of fact whether Woytash knowingly fabricated testimony because another forensic pathologist disagreed with Woytash regarding his findings and methodology in determining the timing of the infant's injuries. That dispute was the basis for the dismissal of the indictment against plaintiff…The fact that Woytash may have been wrong in his findings and conclusions, however, does not raise a triable issue of fact whether he provided false testimony to the grand jury").

     The same arguments hold true with respect to Dr. Sikirica's manner of death determination. A manner of death of "homicide" is not the same as the legal term. It is not meant to speak to the different levels of criminal liability, or the mental state required for those – i.e. depraved indifference versus criminally negligent. Rather, it applies when the autopsy evidence reveals an injury that would not occur absent the action of another. Dr. Sikirica explained multiple times throughout his deposition that based on the head injuries observed in M.T., without a reasonable explanation as to how they occurred, M.T.'s death would be classified a homicide – regardless of Plaintiff's statement to the police. Ex. "BB". This finding is consistent with the opinions of both Dr. Jenny and Dr. Waldman stating that M.T.'s subdural hematomas were caused by trauma. M.T. was four months old at the time of his death, there needed to be an explanation as to how he sustained head trauma in order for the manner of death

11

to be deemed an accident. Ex. "BB". This case comes down to a difference in medical opinions, not fabricated evidence or a nefarious scheme to target Plaintiff, not even reckless disregard.

## POINT II
## PLAINTIFF'S FOURTH CAUSE OF ACTION FOR CONSPIRACY SHOULD BE DISMISSED

**A. Plaintiff Cannot Raise a Material Question of Fact as to His §1983 Conspiracy Claim.**

To survive summary judgment on a § 1983 conspiracy claim, Plaintiff must show "(1) an agreement between ... a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Ostensen v Suffolk County*, 236 Fed Appx 651, 653 (2d Cir 2007) *citing Pangburn v. Culbertson,* 200 F.3d 65, 72 (2d Cir.1999). Thus, Plaintiff must demonstrate that a defendant acted in a willful manner, culminating in an agreement, understanding or 'meeting of the minds,' that violated the plaintiff's rights ... secured by the Constitution or federal courts. *Id.*

The record does not establish a genuine issue of fact as to the existence of a conspiracy between the Defendants to violate Plaintiff's constitutional rights. The contact between Defendant officers and Dr. Sikirica is limited. Defendant Mason attended M.T.'s autopsy and provided parts of the police investigation file. There was no further contact. The mere fact of police attendance at an autopsy is neither unusual nor inappropriate. Plaintiff's own expert has performed autopsies in the presence of law enforcement. *Garlick v. Lee*, 464 F.Supp.3d 611, 614 (S.D.N.Y. 2020)(noting that the autopsy was performed with two homicide detectives in attendance).

Dr. Sikirica reviewed Plaintiff's statement to the police, among a number of other documents, in preparing his autopsy report. However, he had not input into the Defendant officers' interrogation of Plaintiff and was not even aware of it until he received the 10-page

statement. His review of police documents is permitted under New York State Law. County Law § 674 calls for medical examiners to fully investigate the cause of death, which specifically includes fact-finding from witnesses and speaks to cooperation with both the district attorney's office and police. County L. § 674(2).

Presumably, Plaintiff will argue that once the confession was found to be involuntary by the New York State Court of Appeals, Dr. Sikirica should not have included it in his considerations. However, Medical examiners are not law enforcement officers, the office is truly independent from either of those police or the district attorney. 2016 N.Y. Op. Atty. Gen. No. 4 (stating that the medical examiner's are, by law, independent of and not subject to the control of the office of the prosecutor and are not a law enforcement agency). Even if Dr. Sikirica had disregarded Plaintiff's statement, his cause of death determination would have remained the same as there was no explanation as to how the M.T. at 4 month's old sustained head trauma. Without an explanation supporting an accidental cause, Dr. Sikirica had to find that the manner of death was a homicide.

Ultimately, the only meeting that Plaintiff can point to are those that are in the ordinary course of the investigation – providing police files and attending an autopsy. Conduct that is routine and necessary as part of an investigation does not on its own support a cause of action for conspiracy. See, *San Filippo v. U.S. Trust Co. of New York*, 737 F.2d 246, 256 (2d Cir. 1984); *Zahrey v City of New York*, CIVA 98-4546, 2009 WL 1024261, at *11 (S.D.N.Y. Apr. 15, 2009)(holding that a plaintiff must provide more evidence than that Individual Defendants agreed to question witnesses or detain a criminal defendant—he must establish some factual basis to show that Defendants conspired to deprive him of his rights); *Cine SK8, Inc. v Town of*

*Henrietta*, 507 F3d 778, 792 (2d Cir 2007); *Ostensen v Suffolk County*, 236 Fed Appx 651, 653 (2d Cir 2007).

> B. **Plaintiff Cannot Raise a Material Question of Fact as to his §1985 Conspiracy Claim**.

In addition to the requirements to establish a §1983 conspiracy, plaintiff must also prove that the conspiracy was motivated by "some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action. *Thomas v Roach*, 165 F3d 137, 146 (2d Cir 1999). Simply the fact that a plaintiff is a member of a protected class does not, without more, demonstrate that defendants acted because of some discriminatory animus. *Id; Rowe Entertainment Inc. v. William Morris Agency, Inc.,* 167 Fed. Appx. 227, 229 (2d Cir. 2005). Here, Plaintiff has never attempted to prove that defendants actions were racially motivated, Plaintiff deposition testimony stated only that the basis for his claims was he believed it was improper for Dr. Sikirica to review his statement to police as part of his autopsy report. There is no inference or suggestion that race played any part in Dr. Sikirica's conduct. Accordingly, this cause of action should be dismissed.

**POINT III**
**DR. SIKIRICA IS ENTITLED TO IMMUNITY**

"A government official sued in his individual capacity is entitled to qualified immunity (1) if the conduct attributed to him was not prohibited by federal law; or (2) where that conduct was so prohibited, if the plaintiff's right not to be subjected to such conduct by the defendant was not clearly established at the time it occurred; or (3) if the defendant's action was objectively legally reasonable ... in light of the legal rules that were clearly established at the time it was taken." *Costello v Milano*, 20 F Supp 3d 406, 416 (S.D.N.Y. 2014) *citing Munafo v. Metro. Transp. Auth.,* 285 F.3d 201, 210 (2d Cir.2002). "Thus, qualified immunity 'provides ample

protection to all but the plainly incompetent or those who knowingly violate the law." *Id. citing Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).

While it is well established that a person's constitutional rights are violated when material evidence is knowingly fabricated and forwarded to a prosecutor "what about a case where qualified experts honestly draw different conclusions from medical data that all accept as accurate? *Ferris v. City of Cadillac*, 272 F.Supp.3d 1003 (W.D. M.I. 2017). In *Ferris*, the Western District Court for Michigan analyzed multiple cases involving the question of qualified immunity and forensic medical examiners. In doing so, it found that "qualified immunity is designed precisely for such situations to ensure that professionals are willing to engage in the difficult, yet critically important, task of investigating the unexplained death of children while in the custody of their parents or other caretakers. ." *Id.*

In *Ferris* the autopsy report of a 19-month old concluded that the child's cause of death was homicide based on traumatic head injuries. A medical expert retained by the child's family agreed with the medical findings (namely that there was evidence of an extensive bilateral subdural hemorrhage) but disagreed with the manner of death was homicide stating that the child's death could have been contributed to by "strabismus, familial bleeding tendency, and the child's playful age." *Id.* 272 F.Supp.3d at 1007-08. The district attorney's office retained a forensic expert who agreed with the findings and determination of the medical examiner. *Id.* 272 F.Supp.3d at 1008. At the criminal trial, the plaintiff retained a forensic pathologist and neuropathologist who, after review of the autopsy report and medical records, opined that the child "died of bronchopneumonia complicating her head trauma" further stating that he had no evidence as to when the head trauma was inflicted but in his opinion the trauma was a result of an earlier injury. *Id.* 272 F.Supp.3d at 1008-09. This medical expert further opined that the

medical examiner's review was an "incomplete professional diagnostic work-up" and that the conclusion of homicide "based upon the materials that were available and the investigation that was performed was far afield of what any reasonable forensic pathologist would conclude". *Id.* 272 F.Supp.3d at 1009. The District Attorney eventually discontinued the case and the plaintiff brought a cause of action for malicious prosecution.

In evaluating the case, the District Court granted the medical examiner qualified immunity stating, "as long as the medical professionals involved generate and use accurate medical records, and articulate the opinions of what the evidence means honestly and in good faith, qualified immunity should protect them even if their opinions turn out to be wrong." 272 F.Supp.3d at 1011. In affirming the District Court's holding, the Fifth Circuit stated "[i]n sum, the record supports that Dr. de Jong attempt to conduct a through autopsy. Whether she succeed is immaterial to establishing a Fourth Amendment violation…the record at best reveals that defendants were negligent in their investigation, and such a conclusion does not establish a constitutional violation." *Ferris v. City of Cadillac Mich.* 726 Fed.Appx. 473, 483 (5th Cir. 2018).

The *Ferris* Court compared the factual scenario before it to several other cases that had been brought across the country against medical examiners. In doing so, the *Ferris* Court found that "the common theme…is that experts who fabricate evidence; purposely alter, withhold, or spoil evidence; or purposely lie about their work and opinions may well be held to account for wrongful prosecution that results from their misconduct. 272 F.Supp.3d at 1013 analyzing *Gregory v. City of Lousville*, 444 F.3d 725, 737 (6th Cir. 2006)(wherein the plaintiff's expert opined that the medical examiner's findings were "far afield of what any reasonable forensic examiner would find from the evidence". 444 F.3d at 744); *Moldowan v. City of Warren*, 578

F.3d 351 (6th Cir. 2009)(denying qualified immunity where the consulting forensic examiner recanted her conclusions admitting that she had lied about her findings); *Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002)(plaintiff's medical expert testified that the coroner essentially lied about his examination stating that the coroner "could not have examined key internal neck structures that he claimed to have examined"); *Pierce v. Gilchrist*, 359 F.3d 1279 (10th Cir. 2004)(involving allegations that the forensic examiner concealed the fact that hairs at the scene did not match the plaintiffs).

The cases examined in *Ferris* are egregious examples of coroners and medical examiners intentionally breaching public trust. At the very worst, the cases involve medical examiners intentionally hiding exculpatory evidence, at their least they involve situations were experts reviewed their work and found it lacking is scientific basis. The record does not support such a finding here. There is no proof in this case that Dr. Sikirica's autopsy deviated from professional standards, that he withheld evidence, or that his conclusions lacked a scientific basis. To the contrary, both retained experts and independent physicians testified that they agreed with Dr. Sikirican's objective findings and interpretations. Plaintiff's counsel at the criminal trials advocated for Plaintiff by raising questions as to M.T.'s cause of death to prevent a jury from finding beyond *a reasonable doubt* that Plaintiff was guilty. That does not mean that Dr. Sikirica's conclusions were not objectively reasonable.

## CONCLUSION

Due to the foregoing, Defendant Sikirica respectfully requests that Plaintiff's Amended Complaint be dismissed in its entirety.