

**PATTISON, SAMPSON, GINSBERG & GRIFFIN, PLLC**

# letterhead sidebar

22 First Street
P.O. Box 208
Troy, NY 12181-0208

P 518 266 1000
F 518 274 6034
www.psgglaw.com

*Service by Fax Not Accepted*

---

F. Redmond Griffin
Michael E. Ginsberg*
Thomas E. Lavery

---

Rhiannon I. Gifford

---

Edward H. (Ebbie) Pattison
(1896-1986)

Stephen H. Sampson
(1911-1982)

Edward (Ned) Pattison
(1932-1990)

William M. Connors
(1912-1998)

Lambert L. Ginsberg
(1928-2017)

*Admitted in New York and Vermont

---

December 12, 2022

*VIA ECF*

Hon. Daniel J. Stewart
United States Magistrate Judge
James T. Foley U.S. Courthouse
445 Broadway, Room 409
Albany, New York 12207

**Re: Adrian Thomas v. Ronald Fountain, et. al.**
    **Civil Action No.: 1:17-cv-626 (GTS/DJS)**

Dear Judge Stewart:

Please accept this correspondence on behalf of Ronald Fountain, Tim Colaneri, and Adam Mason (the "City Defendants") as a supplemental response to oral arguments as directed by Your Honor on December 5, 2022.

While the City Defendants respectfully submit that they are entitled to summary judgment on the grounds that they did not violate the Plaintiff's Constitutional Rights, the foregoing is submitted in relation to their affirmative defense as to their entitlement to qualified immunity. Police officers are entitled to qualified immunity in two scenarios: (1) if their conduct does not violate clearly established rights of which a reasonable person would have known; or (2) if it was objectively reasonable to believe that their acts did not violate clearly established rights. *Townes v. City of New York*, 176 F.3d 138, 143 (2nd Cir. 1999).

"Official conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood what he is doing violates that right." *Terebesi v. Torreso*, 764 F.3d 217, 230 (2d Cir. 2014) (internal citations and quotations omitted) (see also, *Rivas-Villegas v. Cortesluna*, 142 S. Ct. 4, 8 (2021) (quoting, *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (The Court's "inquiry 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'"). "A rule is too general if the unlawfulness of the officer's conduct 'does not follow immediately from the conclusion that [the rule] was firmly established." *District of Columbia v. Wesby,* 138 S. Ct. 577, 590 (2018), (quoting *Anderson v. Creighton*, 483 U.S. 641 (1987)).

1

In a Fifth Amendment alleged coerced confession analysis, the Court must consider the totality of the circumstances of obtaining said confession. *Nelson v. Walker*, 121 F.3d 828, 833 (2nd Cir. 1997) (internal quotations omitted). The Second Circuit has held that "that factors to be considered include: the characteristics of the accused, such as his experience, background, and education; the conditions of the interrogation; and the conduct of law enforcement officials, notably, whether there was physical abuse, the period of restraint in handcuffs, and use of psychologically coercive tactics." *Id.*

For the instant analysis, this Court need not look beyond the case law relied upon in the Court of Appeals' decision in *People v. Thomas* to determine that the law was not clearly established therefore, the City Defendants are entitled qualified immunity. *See*, *People v. Thomas*, 22 N.Y.3d 629 (2014).

In the Court of Appeals' decision that reversed a unanimous Third Department Appellate Division, and the trial court Judge, the Court specifically declined to hold that the individual police techniques used during the questioning of the Plaintiff were themselves improper. *Id.* at 646. By declining to declare as improper the specific techniques used by the relevant questioning City Defendants, the Court held that such individual techniques are proper and therefore, use of them does not inherently violate clearly established law.

The Supreme Court's holding in *Terebesi* is therefore particularly relevant in this analysis because, if each of the individual techniques used are legal, qualified immunity is warranted because it cannot be said that the rule's contours were so well defined that it was clear that the officer's conduct was unlawful. *Terebesi,* 764 F.3d at 230.

Turning to the specific case law used by the Court of Appeals. The Court, in relevant part, relied upon two federal court cases: *Garrity v. New Jersey*, 385 U.S. 493 (1967) and *Gardner v. Broderick*, 392 U.S. 273 (1986) to determine that under the totality of the circumstances, it was coercive in nature for the officers to represent that if the Plaintiff denied he harmed M.T., then the police would question M.T.'s mother Ms. Hicks, because "[i]t is established that interrogators may not threaten that the assertion of Fifth Amendment rights will result in harm to the interrogee's vital interests." *Thomas* at 642. However, the facts of *Gardner* and *Garrity* are materially different from the specific context of this case and thus, cannot support a determination that the law was sufficiently clear in this Court's qualified immunity analysis. *See*, *Cortesluna*, 142 S. Ct. at 8.

For example, the Supreme Court in *Garrity* held that statements made by "police officers [who] were convicted of conspiracy to obstruct justice on the basis of confessions made after the officers were threatened with the loss of their jobs if

2

they asserted their Fifth Amendment rights . . were 'infected by the coercion inherent in the scheme of questioning' and thus impossible to sustain as voluntary." *Thomas*, 22 N.Y.3d at 642 (quoting *Garrity*, 385 U.S. at 496-98).

Just like *Garrity*, *Gardner* also pertained to a police officer who was dismissed from duty because he refused to waive his privilege against self-incrimination. *Gardner*, 392 U.S. 273. The issue being that the police officers in both cases were presented with the option of losing their means of livelihood or incriminating themselves; a scenario which does not exist herein. *Garrity*, 385 U.S. at 497.

Critically, neither *Garrity* nor *Gardner*, nor any other relevant precedent in this Circuit, had previously held a similar vital interest exists in preventing the questioning of a spouse like the *Thomas* Court determined. Indeed, the Third Department held that the police officer's representations regarding questioning Ms. Hicks was "reasonable." *See*, *Thomas*, 22 N.Y.3d at 642.

The Court of Appeals also determined that under the totality of the circumstances, representing to the Plaintiff that his disclosure of the circumstances under which he injured his child was essential to assist the doctors attempting to save the child's life was coercive in nature however, the Court did not rely upon any specific case or similar fact pattern to suggest that such principal was clearly established. *Id.* at 643. Indeed, the Court of Appeals ". . . agree[d] with the Appellate Division, and it [was] in any case self-evident, that these were representations of a sort that would prompt any ordinarily caring parent to provide whatever information they thought might be helpful, even if it was incriminating." *Id.*

Lastly, the number of times the Plaintiff was assured that what he did was an accident, and if it was an accident he would not be arrested, factored into the Court of Appeals' "landmark decision" to reverse the two lower courts and to suppress the statements. *Id.* at 645. Once again, in contemplating such representations, the Court of Appeals acknowledged that the deceptive assurances deployed were not inherently violative of clearly established law.

Although consideration of a Fifth Amendment claim contemplates the totality of the circumstances, it is respectfully submitted that the legality of each police technique used is not only relevant in ascertaining whether the law was sufficiently established but, also, it is relevant in ascertaining whether it was objectively reasonably for the City Defendants to believe that their acts did not violate clearly established rights as argued by the City Defendants as an alternative basis for dismissal. *See*, *Townes* 176 F.3d at 143.

The instant matter is precisely why the doctrine of qualified immunity was created. There can be no better example of "objective reasonableness" in the belief that the

actions taken by the officers were not in violation of Constitutional Rights since six judges (five at the Appellate Division and the trial court Judge) believed that the "strategies and tactics employed by the officers during the[ ] interviews were not of the character as to induce a false confession and were not so deceptive that they were fundamentally unfair and deprived [the Plaintiff herein] of due process." *Thomas*, 93 A.D.3d at 1027.

To the extent that the Plaintiff asserts that his Fourteenth Amendment rights were violated, such claim must be dismissed because there is no evidence to suggest that the City Defendants engaged in conduct ". . . so brutal and so offensive to human dignity that [it] 'shocks the conscience.'" *Chavez v. Martinez*, 538 U.S. 780, 774 (2003) (quoting *Rochin v. California*, 342 U.S. 165, 172 (1952).

The City Defendants thank the Court for its time and consideration in this matter.

Sincerely,

PATTISON, SAMPSON, GINSBERG & GRIFFIN, PLLC

*Rhiannon I. Gifford*

Rhiannon I. Gifford, Esq.
Direct Dial: (518) 266-1001
gifford@psgglaw.com